JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Maquet Cardiovascular, L.L.C | Terumo Corporation and Terumo Cardiovascular Systems Corporation |

| (b) County of Residence of First Listed Plaintiff  Santa Clara County (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number) Bingham McCutchen LLP - James G. Snell (see also attached) 1900 University Ave. East Palo Alto, CA 94303-2223 Telephone: (650) 849-4400 / Facsimile: (650) 849-4800 | Attorneys (If Known) |

E-FILING
ADR

## C08 01735 JSW

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☐ 190 Other Contract ☐ 195 Contract Product Liability ☐ 196 Franchise | **PERSONAL INJURY** ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury | **PERSONAL INJURY** ☐ 362 Personal Injury— Med. Malpractice ☐ 365 Personal Injury — Product Liability ☐ 368 Asbestos Personal Injury Product Liability **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health ☐ 690 Other | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 **PROPERTY RIGHTS** ☐ 820 Copyrights ☒ 830 Patent ☐ 840 Trademark **SOCIAL SECURITY** ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act ☐ 900 Appeal of Fee Determination Under Equal Access to Justice ☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | **CIVIL RIGHTS** ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/ Accommodations ☐ 444 Welfare ☐ 445 Amer. w/Disabilities – Employment ☐ 446 Amer. w/Disabilities – Other ☐ 440 Other Civil Rights | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence Habeas Corpus: ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | **LABOR** ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Railway Labor Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act **IMMIGRATION** ☐ 462 Naturalization Application ☐ 463 Habeas Corpus – Alien Detainee ☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS—Third Party 26 USC 7609 | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271
Brief description of cause:
Patent Infringement

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**  PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)** (PLACE AND "X" IN ONE BOX ONLY)  ☐ SAN FRANCISCO/OAKLAND    ☒ SAN JOSE

DATE
April 1, 2008

SIGNATURE OF ATTORNEY OF RECORD

## ATTACHMENT TO CIVIL COVER SHEET
**Maquet Cardiovascular, L.L.C. v. Terumo Corporation, et al.**

**Section I(c) - Additional Attorneys**

**Plaintiff Maquet Cardiovascular, L.L.C.:**

Richard S. Taffet (*pro hac vice* to be filed)
399 Park Avenue
New York, NY  10022-4689
Telephone:  (212) 705-7000
Facsimile:  (212) 752-5378

Scott T. Bluni (*pro hac vice* to be filed)
150 Federal Street
Boston, MA  02110-1726
Telephone:  (617) 951-8000
Facsimile:  (617) 951-8736

Gary M. Hnath (*pro hac vice* to be filed)
2020 K Street N.W.
Washington, D.C. 20006-1806
Telephone: (202) 373-6000
Facsimile:  (202) 373-6001

james.snell@bingham.com
richard.taffet@bingham.com
scott.bluni@bingham.com
gary.hnath@bingham.com

Bingham McCutchen LLP
RICHARD S. TAFFET (*pro hac vice* to be filed, NY SBN 1721182)
399 Park Avenue
New York, New York 10022-4689
Telephone: (212) 705-7000
Facsimile: (212) 752-5378
richard.taffet@bingham.com

JAMES G. SNELL (SBN 173070)
1900 University Avenue
East Palo Alto, California 94303-2223
Telephone: (650) 849-4400
Facsimile: (650) 849-4800
james.snell@bingham.com

SCOTT T. BLUNI (*pro hac vice* to be filed, MA SBN 660187)
150 Federal Street
Boston, Massachusetts 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8736
scott.bluni@bingham.com

GARY M. HNATH (*pro hac vice* to be filed, DC SBN 388896)
2020 K Street N.W.
Washington, D.C. 20006-1806
Telephone: (202) 373-6000
Facsimile: (202) 373-6001
gary.hnath@bingham.com

Attorneys for Plaintiff
MAQUET CARDIOVASCULAR, L.L.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C08 01735

MAQUET CARDIOVASCULAR, L.L.C., a Delaware L.L.C.,

Plaintiff,

v.

TERUMO CORPORATION, a Japanese corporation and TERUMO CARDIOVASCULAR SYSTEMS CORPORATION, a Delaware corporation,

Defendants.

No.

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

A/72436314.16/3007859-0000331185

<div align="center">

**COMPLAINT**

</div>

1          Plaintiff Maquet Cardiovascular L.L.C. ("Maquet") hereby alleges for its

Complaint against defendants Terumo Corporation and Terumo Cardiovascular Systems

Corporation (collectively "Terumo"), on personal knowledge as to its own activities and on

information and belief as to the activities of others, as follows:

<div align="center">

**The Parties**

</div>

1.      Maquet Cardiovascular L.L.C. ("Maquet") is a Delaware limited liability

company with its principal office at 170 Baytech Drive, San Jose, California 95134. Maquet is

an innovative company focused on developing medical solutions that enable quicker, safer, and

more cost effective treatment of patients.

2.      Terumo Corporation is a Japanese corporation with its headquarters at 44-1, 2-

chome, Hatagaya, Shibuya-ku, Tokyo, 151-0072, Japan. Terumo is a multi-billion dollar, global

medical products company. According to Terumo's website, its main business is the

"[m]anufacture and sales of medical products and equipment, including pharmaceuticals,

nutritional food supplement, blood bags, disposable medical devices, cardiovascular systems,

vascular grafts, peritoneal dialysis, blood glucose monitoring system, medical electronic, and

digital thermometers." Terumo Corporation - About Terumo - Profile, http://www.terumo.co.jp

/English/company/index.html (last visited Mar. 28, 2008).

3.      Terumo Cardiovascular Systems Corporation ("TCS") is a Delaware corporation

with its principal place of business at 6200 Jackson Road, Ann Arbor, Michigan 48103. On

information and belief, TCS is an indirect (through Terumo Medical Corporation) wholly owned

subsidiary of Terumo Corporation. On information and belief, TCS is entirely controlled by

Terumo Corporation, and operates as a department of Terumo Corporation. TCS maintains a

manufacturing facility in California at 1311 Valencia Ave., Tustin, California 92780. According

to TCS's website, "Terumo Cardiovascular Systems … develop[s] and manufacture[s] precision-

focused products for the specialized needs of the cardiac surgical team with an emphasis on

cardiopulmonary bypass and intraoperative monitoring." Terumo Cardiovascular Systems --

About Us, http://www.terumo-cvs.com/about_us/default.asp (last visited Mar. 28, 2008).

<div align="center">

COMPLAINT FOR PATENT INFRINGEMENT

</div>

1                                          **Jurisdiction**

2            4.        This Court has jurisdiction over the subject matter of this case pursuant to

3      28 U.S.C. §§ 1331 and 1338(a) because this is an action for patent infringement arising under the

4      patent laws of the United States, 35 U.S.C. § 1 *et seq.*

5            5.        This Court has personal jurisdiction over Defendant Terumo Corporation based

6      upon, but not limited to, its minimum contacts with this state and/or the activities of TCS, which

7      operates as Terumo Corporation's general agent, in this state.  On information and belief,

8      Terumo's accused products are and have been sold in California.

9            6.        This Court has personal jurisdiction over Defendant TCS based upon the physical

10     presence of its Tustin manufacturing facility in this state and its economic activities conducted in

11     and/or directed at this state.  On information and belief, Terumo's accused products are and have

12     been sold in California.

13                               **Venue and Intra-district Assignment**

14           7.        Venue is proper in this division pursuant to 28 U.S.C. §§ 1391(d) and 1400(b)

15     because defendants are subject to personal jurisdiction in this judicial district, having conducted

16     business and committed acts of infringement in this judicial district, and/or are aliens subject to

17     suit in any district.

18           8.        Per Civil Local Rule 3-2(c), this patent infringement action may be assigned on a

19     district-wide basis.  Maquet, which has its principal place of business in San Jose, California,

20     requests that this matter be assigned to the San Jose Division.

21                                          **Background**

22           9.        Maquet is the owner of all right, title and interest, by assignment, of U.S. Patent

23     No. Re. 36,043 ("the '043 Patent"), entitled "Endoscope and Method for Vein Removal" and

24     attached as Exhibit A hereto, and U.S. Patent No. 6,830,546 ("the '546 Patent"), entitled "Device

25     and Method for Remote Vessel Ligation" and attached as Exhibit B hereto (collectively, the

26     "Patents in Suit").

27           10.       The Patents in Suit involve innovative technology that allows for a minimally

28     invasive technique for harvesting healthy blood vessels from a patient for use in other parts of

A/72436314.16/3007859-0000331185                      3

1   the patient's body, such as in heart bypass surgery, or for use in another patient's body.  This is

2   an improvement over conventional vein harvesting methods, including making a long incision

3   along the full length of the vein section for removal.  The technology described and claimed in

4   the Patents in Suit allows for a vessel section to be harvested through one or more small

5   incisions, thereby obviating the need to make a long incision along the full length of the vessel

6   section.  Among the benefits of this technology is that it reduces trauma and recovery time for

7   the patient.

8          11.    Maquet develops, manufactures, markets, and sells or has sold endoscopic vein

9   harvesting products that use this innovative technology, including:  VasoView® HemoPro™,

10   VasoView® 7xB™, VasoView® 7xS™, VasoView® 6, VasoView® 5, VasoView® 4, and

11   other products having similar configurations ("the VasoView® Products").

12          12.    On information and belief, Terumo Corporation uses, imports, distributes, sells,

13   and/or offers for sale, including in the United States and in this Judicial District in the State of

14   California, the VirtuoSaph™ Endoscopic Vein Harvesting System ("VirtuoSaph™") and/or

15   components thereof.  Such conduct infringes Maquet's rights in and to the Patents in Suit.

16          13.    TCS uses, imports, distributes, sells, and/or offers for sale, including in the United

17   States and in this Judicial District in the State of California, the VirtuoSaph™ product and/or

18   components thereof.  On information and belief, TCS maintains a network of subsidiaries, sales

19   branches, and/or third party distributors that offers to sell and have sold the VirtuoSaph™

20   product in the United States.  Such conduct infringes Maquet's rights in and to the Patents in

21   Suit.

22          14.    The VasoView® Products have been marked with the numbers of the Patents in

23   Suit.

24                        **FIRST CAUSE OF ACTION**
                   **(Infringement of U.S. Patent No. Re. 36,043)**
25

26          15.    Maquet repeats and incorporates by reference the allegations contained in the

27   paragraphs above.

28          16.    Terumo Corporation and TCS, through their using, importation, selling, and

A/72436314.16/3007859-0000331185                    4
─────────────────────────────────────────────────────
COMPLAINT FOR PATENT INFRINGEMENT

1   offering for sale of the VirtuoSaph™ product in the United States, have infringed and continue to

2   infringe the '043 Patent directly, contributorily, and/or by inducement, either literally or under

3   the doctrine of equivalents, in violation of 35 U.S.C. § 271.

4       17.    Maquet has suffered damages due to the acts of infringement by the Terumo

5   defendants in an amount to be established at trial.

6       18.    The Terumo defendants' infringement has been willful and deliberate.

7       19.    Unless enjoined by this Court, Terumo Corporation and TCS will continue to

8   infringe '043 Patent, and Maquet will suffer damages and irreparable harm.

9                          **SECOND CAUSE OF ACTION**
10                     **(Infringement of U.S. Patent No. 6,830,546)**

11      20.    Maquet repeats and incorporates by reference the allegations contained in the

12  paragraphs above.

13      21.    Terumo Corporation and TCS, through their using, importation, selling, and

14  offering for sale of the VirtuoSaph™ product in the United States, have infringed and continue to

15  infringe the '546 Patent directly, contributorily, and/or by inducement, either literally or under

16  the doctrine of equivalents, in violation of 35 U.S.C. § 271.

17      22.    Maquet has suffered damages due to the acts of infringement by the Terumo

18  defendants in an amount to be established at trial.

19      23.    The Terumo defendants' infringement has been willful and deliberate.

20      24.    Unless enjoined by this Court, Terumo Corporation and TCS will continue to

21  infringe the '546 Patent, and Maquet will suffer damages and irreparable harm.

22                          **Prayer for Relief**

23      25.    WHEREFORE, Maquet requests that the Court enter judgment in its favor and

24  against Terumo as follows:

25      (a)    Granting a preliminary and permanent injunction enjoining Terumo

26  Corporation and TCS, and each of their respective officers, agents, representatives, distributors,

27  employees, affiliates, parent and subsidiary corporations, and all those in privity or acting in

28  concert with them, from further infringing, contributing to and/or inducing the infringement of

1    the Patents in Suit;

2         (b)    Awarding compensatory damages to Maquet, including but not limited to

3    lost profits and/or a reasonable royalty, according to proof at trial;

4         (c)    Awarding treble damages to Maquet, including pursuant to 35 U.S.C. § 284;

5         (d)    Awarding attorneys' fees to Maquet, including pursuant to 35 U.S.C. § 285;

6         (e)    Awarding such other relief as the Court deems just and proper.

7    Dated:  April 1, 2008

8

9                          BINGHAM McCUTCHEN LLP

10

11                  By:_____

12                              James Snell
                          Attorneys for Plaintiff
13                      MAQUET CARDIOVASCULAR, L.L.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                **Jury Trial Demanded**

2           Plaintiff Maquet Cardiovascular, L.LC. hereby demands a jury trial on all issues

3 triable to a jury in this action.

4 Dated:  April 1, 2008

5

6                                     BINGHAM McCUTCHEN LLP

7

8                               By:_____

9                                        James Snell

                                     Attorneys for Plaintiff

10                         MAQUET CARDIOVASCULAR, L.L.C.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72436314.16/3007859-0000331185

---

# EXHIBIT A

US00RE36043E

# United States Patent [19]

**Knighton**

[11] E    **Patent Number:   Re. 36,043**

[45] **Reissued   Date of Patent:   Jan. 12, 1999**

[54] **ENDOSCOPE AND METHOD FOR VEIN REMOVAL**

[75] Inventor: **David R. Knighton**, Minneapolis, Minn.

[73] Assignee: **Embro Vascular, L.L.C.**

[21] Appl. No.: **585,410**

[22] Filed: **Jan. 11, 1996**

**Related U.S. Patent Documents**

Reissue of:
[64] Patent No.:   **5,373,840**
    Issued:   **Dec. 20, 1994**
    Appl. No.:   **956,904**
    Filed:   **Oct. 2, 1992**

[51] **Int. Cl.⁶** ............................................. **A61B 1/00**
[52] **U.S. Cl.** ....................... **600/101**; 600/104; 600/114; 606/157
[58] **Field of Search** ........................ 600/101, 104, 600/106, 107, 183, 114; 606/157, 158, 159, 205, 207, 40, 49, 190, 198

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| Re. 29,088 | 12/1976 | Shaw . |
| 1,867,624 | 7/1932 | Hoffman . |
| 2,001,169 | 5/1935 | Wallace . |
| 2,011,169 | 8/1935 | Wappler . |
| 2,028,635 | 1/1936 | Wappler . |

(List continued on next page.)

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 3942589 | 7/1991 | Germany . |
| 510235 | 5/1976 | U.S.S.R. . |
| 1123674A | 11/1984 | U.S.S.R. . |
| 1371689 A1 | 3/1986 | U.S.S.R. . |
| 2082459 | 3/1982 | United Kingdom . |
| 2195540 | 4/1988 | United Kingdom . |

### OTHER PUBLICATIONS

DeLaria, G.A., et al., "Leg Wound Complications Associated With Coronary Revascularization", *J. Thorac. Cardiovasc. Surg.*, 81:403–407, 1981.

Dmitri et al., "A quick and atraumatic method of autologous vein harvesting using the subcutaneous extraluminal dissector", *J. Cardiovasc. Surg.* 28:103–111 (1987).

(List continued on next page.)

*Primary Examiner*—Beverly M. Flanagan
*Attorney, Agent, or Firm*—Popovich & Wiles, P.A.

[57] **ABSTRACT**

An endoscope for use in harvesting blood vessels includes a scope body of the type having a lumen extending longitudinally therethrough which itself has a proximal and a distal end. The endoscope includes means for viewing an area adjacent the distal end of the lumen, and the lumen has a lateral dimension of a size sufficient to accommodate the blood vessel being harvested and at least one tool for use in harvesting the blood vessel. A first end of the blood vessel section to be harvested is exposed through an incision in the patient's body. A dissecting tool and a gripping tool are inserted through the lumen of the endoscope and used to dissect the blood vessel away from the surrounding connective tissue of the patient's body, using the viewing means of the endoscope to view this dissection in process within the patient's body. Additional tools are provided for use through the lumen of the endoscope to remove body fluids and coagulate bleeding tissue, and to sever side branches from the blood vessel to be harvested, as well as to sever a distal end of the blood vessel to be harvested when a desired length of blood vessel has been dissected. Only a single small incision in the patient's body is necessary to harvest a relatively long length of blood vessel in a precise and controlled manner through endoscopic vision using the inventive endoscope and its related tools.

*The questions raised in reexamination request No. 90/004, 301, filed Jul. 12, 1996, have been considered and the results thereof are reflected in this reissue patent which constitutes the reexamination certificate required by 35 U.S.C. 307 as provided in 37 CFR 1.570(e).*

**52 Claims, 8 Drawing Sheets**



Re. 36,043

Page 2

<div style="columns:2">

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,316,297 | 4/1943 | Southerland et al. . |
| 2,868,206 | 1/1959 | Stoesser . |
| 2,944,552 | 7/1960 | Cannon . |
| 3,185,155 | 5/1965 | Slaten et al. . |
| 3,336,916 | 8/1967 | Edlich . |
| 3,856,016 | 12/1974 | Davis . |
| 3,882,854 | 5/1975 | Hulka et al. . |
| 3,934,115 | 1/1976 | Peterson . |
| 4,038,987 | 8/1977 | Komiya . |
| 4,362,160 | 12/1982 | Hiltebrandt . |
| 4,369,768 | 1/1983 | Vukovic . |
| 4,440,170 | 4/1984 | Golden et al. . |
| 4,493,321 | 1/1985 | Leather . |
| 4,499,898 | 2/1985 | Knepshield . |
| 4,499,899 | 2/1985 | Lyons, III . |
| 4,516,575 | 5/1985 | Gerhard et al. . |
| 4,556,058 | 12/1985 | Green . |
| 4,586,919 | 5/1986 | Taheri . |
| 4,597,389 | 7/1986 | Ibrahim et al. . |
| 4,638,802 | 1/1987 | Okada . |
| 4,653,476 | 3/1987 | Bonnet . |
| 4,745,908 | 5/1988 | Wardle . |
| 4,759,348 | 7/1988 | Cawood . |
| 4,759,364 | 7/1988 | Boebel . |
| 4,762,120 | 8/1988 | Hussein . |
| 4,768,508 | 9/1988 | Chin et al. . |
| 4,793,346 | 12/1988 | Mindich . |
| 4,858,595 | 8/1989 | Buess et al. . |
| 4,862,874 | 9/1989 | Kellner . |
| 4,869,268 | 9/1989 | Yoon . |
| 4,877,016 | 10/1989 | Kantor et al. . |
| 4,932,952 | 6/1990 | Wojciechowicz, Jr. . |
| 4,997,436 | 3/1991 | Oberlander . |
| 5,013,312 | 5/1991 | Parins et al. . |
| 5,020,514 | 6/1991 | Heckele . |
| 5,037,433 | 8/1991 | Wilk et al. . |
| 5,047,038 | 9/1991 | Peters et al. . |
| 5,049,154 | 9/1991 | Quadri .............................. 606/171 X |
| 5,213,093 | 5/1993 | Swindle . |

| | | |
|---|---|---|
| 5,284,478 | 2/1994 | Nobles et al. . |
| 5,373,840 | 12/1994 | Knighton . |
| 5,425,355 | 6/1995 | Kulick . |
| 5,447,513 | 9/1995 | Davison et al. . |
| 5,549,637 | 8/1996 | Crainic |

#### OTHER PUBLICATIONS

Hauer et al., "Endoscopic subfacial discission of perforating veins", *Surgical Endosc.* 2:5–12 (1988).

Meldrum–Hanna et al., "Long Saphaneous Vein Harvesting". *J. Surg.* 56:923–924 (1986).

Moazami, Nader, Ph.D., et al., "Minimally Invasive Greater Saphenous Vein Harvesting for Coronary Artery Bypass Surgery", *Surgical Rounds*, pp. 94–98. Mar. 1997.

Rashid, A., et al., "Subcutaneous Technique for Saphenous Vein Harvest", *Ann. Thorac. Surg.*, 37(2):169–170, 1984.

Wheatley, D.J., ed., *Surgery of Coronary Artery Disease*, C.V. Mosby Co., pp. 348–349, 374–375.

"Incision Decision", Atrium Medical Corporation advertisement, appearing in *J. Thorac. Cardiovasc. Surg.*, 83(4), 1982.

"Saphenous vein grafts are number 1. Period.", Atrium Medical Corporation advertisement, appearing in *J. Thorac. Cardiovasc. Surg.*, 81(6), 1982.

"The in Situ Saphenous Vein Arterial; Bypass by Valve Incision," R. P. Leather et al., *Vascular Surgical Techniques An Atlas*, 1989, pp. 255–262.

"Reversed Saphenous Vein for Femoropopliteal Bypass Grafting," K. G. Burnand, *Vascular Surgical Techniques An Atlas*, K. G. Burnand et al., 1989, pp. 228–234.

"Angioscopic Preparation for Saphenous Vein in Situ Bypass Grafting," A. K. Chin et al.,*Endovascular Surgery*, 1989, pp. 74–81.

J. Sklar Mfg. Co., Inc., "Surgical Instruments", Long Island City, NY; 1973.

Loré, John Marion, "Tender Grip Forceps", American Journal of Surgery; vol. 104; 7/1962. h .

</div>



*Fig. 1*



*Fig. 2*



*Fig. 3*



*Fig. 4*



*Fig. 4A*



*Fig. 4B*



*Fig. 5*



*Fig. 6*



Fig. 7



*Fig. 8*



*Fig. 9*



*Fig. 10*



*Fig. 11*



*Fig. 12*



*Fig. 13*



*Fig. 14*

Re. 36,043

1

## ENDOSCOPE AND METHOD FOR VEIN REMOVAL

**Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.**

### BACKGROUND OF THE INVENTION

The present invention relates generally to surgical instruments. In particular, the present invention relates to a method and instrument for harvesting a section of a blood vessel from a patient.

In certain surgical procedures, it is necessary to remove a section of a blood vessel from a patient for use in another part of the patient's body or for transplanting into a second patient's body. For example, a section of the saphenous vein may be removed for use in coronary bypass surgery. Previously, it has been necessary to make an incision along the full length of the vein section to be removed. The vein is then freed by severing and ligating the branches of the vein, after which the section of the vein can be removed from the patient. The full length incision must then be closed, for example by suturing or staples. Obviously, the harvesting of the vein in this manner leaves disfiguring scars which are cosmetically undesirable. Additionally, the large incision creates a risk of infection to the patient and may not heal properly, especially with those patients who have poor circulation in their extremities. Such an incision may create a chronic wound which will not heal.

Devices for harvesting a section of a blood vessel without creating a full length incision have been suggested. U.S. Pat. No. 4,793,346 to Mindich discloses a device for harvesting a section of a blood vessel by making only small incisions at opposite ends of the blood vessel section. The device includes a guide rod which fits inside of the vein section and a tube having an inner diameter slightly larger than the outer diameter of the vein section to be harvested. The tube has one or more knife blades at the leading edge which are connected to an electrical supply. The vein section is removed by making the incision sufficiently deep so as to expose the ends of the blood vessel section to be harvested. The blood vessel is cut to expose one end, the guide rod is inserted inside the blood vessel section, and the tube is placed over the end of the blood vessel section to be removed. The tube is then pushed along the blood vessel (into the patient) while rotating the tube to sever the branches of the blood vessel with the knife blades mounted at the leading edge of the tube. Electrical current is supplied to the knife blades to heat the blades and thereby cauterize the ends of the severed branches of the blood vessel. The procedure is continued until the tube has reached the second of the two incisions. The blood vessel is exposed and cut from the patient at the second incision, and the tube is then removed from the patient with the blood vessel section inside of the tube. The blood vessel section is then removed from the tube for further treatment and used as desired.

UK Patent Application GB 20 82 459A discloses a device for harvesting a section of a blood vessel similar to that disclosed in the Mindich patent. Again, two incisions are made, one at each end of the blood vessel section to be harvested. A guide rod is inserted into the blood vessel section through one of the incisions and a tube having a cutting element at its operative end is passed over the blood vessel section and guide rod assembly. The tube is rotated as it passes over the blood vessel section to sever the connect-

2

ing branches. After the tube has passed the entire length of the blood vessel section, the section is cut away through the second incision and the tube is removed from the patient with the harvested section inside the tube.

The blood vessel harvesting devices of the prior art have certain distinct disadvantages. While the prior art devices eliminate the need for a full length incision to remove the blood vessel segment, two incisions, one at each end of the segment to be harvested, are required in order to remove the blood vessel segment. For patients likely to develop chronic wounds, each additional incision increases the risk to the patient, and it is desirable to keep such incisions as close to the patient's trunk as possible and to minimize the number and size of such incisions. Additionally, the prior art devices do not allow for the viewing of the dissection of the blood vessel segment. The physician operating the removal device is unable to see the progression of the dissection and must rely on the guide rod inserted within the blood vessel to guide the cutting instrument in the proper direction. The inability to view the dissection directly increases the risk of damaging the blood vessel segment and the risk of causing injury to the patient.

In addition, it is critical that the segment of blood vessel being harvested is handled with great care since it is destined for reuse (e.g., as an arterial bypass). The blind insertion of a guide rod into the blood vessel damages and likely destroys the endothelium of the vessel. The prior art devices also have the disadvantage of being unable to adequately close off severed branches of the blood vessel and thus are unable to adequately control bleeding. As a result, the patient suffers greater blood loss than is necessary. The prior art devices also may remove more tissue than is necessary because the size of the cutting device is not readily adaptable to changes in the size of the blood vessel.

There is a need for an efficient and effective means for harvesting a section of a blood vessel from the body of a patient. Specifically, there is a need for a device that does not require insertion of any component within the vessel being harvested, and that allows direct viewing of the dissection of the blood vessel segment while at the same time minimizing the size of the incision into the patient's body. Such a device would allow the physician to be much more precise in this procedure, minimize the risk of the patient developing a chronic wound that will not heal, minimize the amount of scarring to the patient's body and maintain the internal integrity of the blood vessel being harvested.

### SUMMARY OF THE INVENTION

The present invention is a device and method for harvesting a section of a blood vessel from a patient's body. The invention includes an endoscope of the type having a scope body with a lumen extending longitudinally therethrough, with the lumen having a proximal end and a distal end. The endoscope includes means for viewing an area adjacent to the distal end of the lumen. The lumen has a lateral dimension of size sufficient to accommodate a blood vessel and at least one tool for use in harvesting the blood vessel.

This endoscope for harvesting a blood vessel is relatively uncomplicated. The endoscope allows a section of a blood vessel to be removed by making only a small incision at one end of the blood vessel section to be harvested. The incision exposes a first end of the blood vessel section to be harvested and the first end is inserted through the lumen of the endoscope. The blood vessel is then dissected away from surrounding connective tissue of the patient's body with a dissecting tool inserted through the lumen of the endoscope.

Re. 36,043

3

using the viewing means to view the dissection in process as the endoscope is advanced along the blood vessel into the patient's body.

In one preferred embodiment, the endoscope is used with a tool for ligating and cutting branches of the blood vessel segment or a second end of the blood vessel segment. The tool has a distal operative tip with means on the distal tip for applying a ligation clip to a section of the blood vessel specimen which is to be sealed. There are also means on the distal tip for cutting the blood vessel segment between the clip and the first end of the blood vessel segment. The tool eliminates the requirement of making a second incision at the second end of the blood vessel segment to cut the blood vessel segment at the second end so that it may be removed.

The endoscope is ideally suited for patients likely to develop chronic wounds, such as diabetics or other persons with poor circulation, because only one small incision is required to remove the blood vessel segment. The endoscope also allows the physician to directly view the dissection of the blood vessel segment. The ability to directly view the dissection allows the physician to conduct the vessel harvesting procedure much more efficiently and precisely, minimizing the risk of damage the blood vessel and minimizing the risk of injury to the patient.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention will further be described with reference to the accompanying drawings, where like numbers refer to like parts in several views, and wherein:

FIG. 1 is a perspective view of the inventive endoscope and some related tools, along with a portion of a patient's leg;

FIG. 2 is a side elevational view of a dissecting tool of the present invention, with its distal end enlarged in perspective;

FIG. 3 is a side elevational view of a gripping tool of the present invention, with its distal end enlarged in perspective;

FIG. 4 is a side elevational view of a ligation-cutting tool of the present invention, with its distal end shown enlarged in perspective;

FIG. 4A is a top plan view of the distal end of the ligation-cutting tool of FIG. 4;

FIG. 4B is a side elevational view of the distal end of the ligation-cutting tool of FIG. 4;

FIG. 5 is a side elevational view of a side-biting ligation-cutting tool of the present invention, with its distal end enlarged in perspective;

FIG. 6 is a side elevational view of a suction-coagulator tool of the present invention;

FIG. 7 is an enlarged perspective view of the endoscope of the present invention;

FIG. 8 is a perspective view of the endoscope of the present invention, showing its two-part assembly;

FIGS. 9–13 are enlarged perspective illustrations showing the distal end of the inventive endoscope and the tools of FIGS. 2–6 in use during the harvesting of a blood vessel; and

FIG. 14 illustrates the partial removal of a partially dissected blood vessel through a second incision, when a long continuous segment of blood vessel is desired to be dissected from the patient's body.

While the above-identified drawing figures set forth one preferred embodiment of the invention, other embodiments are also contemplated, as noted in the discussion. In all cases, this disclosure presents the present invention by way of representation and not limitation. It should be understood

4

that numerous other modifications and embodiments can be devised by those skilled in the art which fall within the scope and spirit of the principles of this invention. It should be specifically noted that the figures have not been drawn to scale as it has been necessary to enlarge certain portions for clarity.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is a device and method for harvesting a section of a vessel from a patient's body for use in another part of the patient's body or for transplanting into a second patient's body. For example, a section of the saphenous vein may be removed for use in coronary bypass surgery. The blood vessel needs to be removed without undue damage to the blood vessel, as well as with minimal damage and trauma to the patient. Although the description herein is directed to the harvesting of the saphenous vein, it is contemplated that the present invention be used in connection with the efficient and effective harvesting of the other lumens and vessels from a patient's body.

THE TOOLS

In FIG. 1, a saphenous vein 20 (shown in phantom) and endoscope 30 are shown. The saphenous vein 20 travels along the medial side of the foot, leg, and thigh, where it joins with the femoral vein near the groin.

When used to harvest a blood vessel, the endoscope 30 is used in conjunction with several tools. A dissecting tool 100 (FIG. 2) is used to separate the blood vessel from the surrounding connective tissue. A gripping forceps 150 (FIG. 3) is used by the physician to hold the blood vessel 20 during the procedure. A ligation-cutting tool 200 (FIG. 4) is used when severing side branches 22 from the blood vessel 20. A side-biting ligation-cutting tool 250 (FIG. 5) is used to transect the blood vessel 20 when the dissection is completed. Finally, a suction-coagulator tool 300 (FIG. 6) is used to control bleeding during the procedure. Each of these tools is described in detail in the succeeding discussions.

As illustrated in FIGS. 1 and 7, the endoscope 30 includes an elongated scope body 34 and a handle 36. A lumen 38 extends longitudinally through the scope body 34 and has a cross-sectional shape which is substantially elliptical. The lumen 38 is of a size large enough to accommodate the blood vessel 20 which is to be harvested and one or more of the tools 100, 150, 200, 250 and 300 longitudinally therein. In one embodiment, the size of the lumen 38 in the scope body 34 is 2 cm wide by 1 cm deep in an elliptical shape, while the scope body 34 itself is 30 to 90 centimeters long. Each of the tools is at least 2 cm longer than the scope body 34. As illustrated in FIG. 8, the scope body 34 of the endoscope 30 is selectively securable to the handle 36. The scope body 34 can thus be made as a disposable unit to eliminate problems with re-sterilization of the portion of the endoscope 30 that enters the patient's body. After use, the endoscope is disassembled, the scope body 34 disposed of, and the handle 36 (containing power connections, lighting means, etc.) saved for repeated use with a new scope body. Alternatively, the scope body has a longitudinal channel therein for reception of the viewing and illumination portions of the endoscope, so that those components are reused while the scope body is disposed after each use. The scope body is provided in a variety of lengths and sizes (cross-sectional) to accommodate patients of different sizes and different blood vessel lengths.

As seen in FIG. 7, fiber optics illumination source 40 and a fiber optics viewing device 42 are located at the distal end

Re. 36,043

<table>
<tr><th>5</th><th>6</th></tr>
</table>

of the endoscope 30 and positioned adjacent each other such that the area immediately adjacent the distal end of endoscope 30 can be illuminated and viewed by the physician. When connected to the handle 36, the source 40 is operably connected to an external light source 43 by a suitable light transmission conduit 44 which extends through the endoscope 30. Similarly, the viewing device 42 is operably connected to an external monitor 45 by a suitable image transmission conduit 46 which extends through the endoscope 30. The physician views the area adjacent the distal end of endoscope 30 using the illumination source 40 and the viewing device 42 by use of the viewing monitor 45 (FIG. 1) which is connected to the endoscope handle 36 through the conduit 46. The monitor 45 may take several forms, such as a television monitor or an eye-piece worn by the physician, as is conventional. The endoscope body 34 also has an irrigation channel 48 extending therethrough. The irrigation channel is operably coupled to an external source of irrigant 49 via a suitable conduit 50. A distal open end of the irrigation channel is positioned adjacent the distal ends of the fiber-optic illumination source 40 and the viewing device 42, as seen in FIG. 1.

Each of the tools 100, 150, 200, 250 and 300 to be used with the endoscope 30 are of a size small enough to fit through the lumen 38 of the scope body 34 while a blood vessel 20 is also in the lumen 38. The tools 100, 150, 200, 250 and 300 are also long enough to allow the physician to comfortably manipulate them through the lumen 38 (i.e., the tools 100, 150, 200, 250 and 300 are longer than the lumen 38).

The dissecting tool 100 (FIG. 2) is used to aid in separating the vessel being harvested from the surrounding tissue. The dissection tool 100 has an elongated shaft 105, with a handle 106 attached to the proximal end of the shaft 105 and an annular dissecting ring 110 attached to the distal end of shaft 105. The dissecting ring 110 is oriented such that a plane defined by the dissecting ring 110 is generally perpendicular to the longitudinal axis of the shaft 105. The size of dissecting ring 110 is large enough to fit over the exterior of the blood vessel 20. The dissecting ring 110 has a rounded distal edge 112 used to separate the blood vessel 20 from the surrounding connective tissue as the dissecting tool 100 is advanced over the blood vessel 20. The dissecting tool 100 is provided in a plurality of sizes for different sizes of blood vessels. Typical sizes for such tools would have inside diameters of 4 mm, 5 mm, and 6 mm.

The gripping tool 150 (FIG. 3) is used to hold and retain the vessel being harvested during the procedure. The gripping tool 150 has an elongated shaft 155, with a handle 156 attached to a proximal end of the shaft 155 and a gripping mechanism 160 attached to a distal end of the shaft 155. The handle 156 is preferably a scissors-type handle to actuate the gripping mechanism 160 at the distal end of the body 158 and includes a latching mechanism 157 which allows the gripping mechanism to be locked in position (e.g., in a "gripping" position). The shaft 155 transmits the actuating movement from the handle 156 to the gripping mechanism 160. The gripping mechanism 160 includes a first jaw 162 and a second jaw 164 which oppose each other. When the gripping handle 156 is operated by the physician, the first jaw 162 and the second jaw 164 are moved toward each other and may be used to grip the blood vessel 20 between gripping surfaces 166 and 168 thereon. The jaws 162 and 164 are small enough to fit through the dissecting ring 110 on the dissecting tool 100.

The ligation-cutting tool 200 (FIGS. 4, 4A and 4B) is used to sever and seal side branches on the vessel being har-

vested. The ligation-cutting tool 200 has an elongated shaft 201, with a ligation clip applicator 202 and a cutting mechanism 204 at the distal end of the shaft 201. The ligation clip applicator 202 includes a first yoke 208 and a second opposed yoke 210. Each yoke 208 and 210 is in turn divided into two sections; each yoke 208 and 210 is forked at its distal end, forming two opposed prongs 212A and 212B on the yokes 208 and 210, respectively. The prongs 212A and 212B on yokes 208 and 210 are parallel to each other and generally aligned with the longitudinal axis of the ligation-cutting tool 200. The yoke 208 and 210 and the prongs 212A and 212B thereon oppose each other and serve to apply ligation clips 216 (see FIGS. 4A and 4B) to a side branch 22 being severed. The opposing prongs 212A and 212B of each yoke 208 and 210 contain grooves 214A and 214B, respectively, to securely hold a ligation clip 216 therein. When the ligation clips 216 are thus held between the opposing prongs 212A and 212B of yokes 208 and 210, the generally U-shaped ligation clips 216 aid the physician in properly aligning the ligation-cutting tool 200 and the side branch 22 to be ligated by providing an abutment for the side branch 22 when the side branch 22 is positioned between the yokes 208 and 210. When the yokes 208 and 210 and the prongs 212A and 212B are biased towards each other in a conventional manner, the ligation clips 216 are deformed to clamp onto the side branch 22 therebetween and the blood flow through the side branch 22 is halted at two slightly spaced apart points (e.g., two clips are applied approximately 0.25 inches apart). When the ligation clip applicator 202 is activated and the yokes 208 and 210 clamp the ligation clips 216 onto the side branch 22, the side branch 22 is also held securely for cutting the side branch 22.

The cutting mechanism 204 on the ligation-cutting tool 200 includes a cutting blade 230 aligned between the prongs 212A and 212B and proximal to the ligation clips 216. The cutting blade 230 is normally retracted (as seen in FIGS. 4, 4A and 4B) to allow the side branch 22 to be positioned properly between the yokes 208 and 210. A cutting edge 232 of the blade 230 faces the distal end of the ligation-cutting tool 200, and the cutting motion of the blade 230 is in a distal direction (e.g., towards the side branch 22). The blade 230 is wide enough to completely sever the side branch 22 between the two yokes 208 and 210. The cutting mechanism 204 is activated by the physician (as described below) after the side branch 22 has been ligated (i.e., the side branch 22 has been clipped shut and blood flow halted) and while the side branch is still held securely in the yokes 208 and 210. After the blade 230 has severed the side branch 22, the blade 230 returns into its original retracted position.

The ligation clip applicator 202 and the cutting mechanism 204 are both actuated by mechanisms at the proximal end of the shaft 201 of the ligation-cutting tool 200. The ligation clip applicator 202 is preferably actuated by a scissors-type handle 220. By squeezing the scissors-type handle 220, the physician causes each set of prongs 212A and 212B on the yokes 208 and 210 to be moved together, thereby compressing their respective ligation clips 216 about the side branch 22 of the blood vessel 20, as described above. The scissors-type handle 220 includes a latching mechanism 222 which serves to secure the handle 220 and thus the ligation clip applicator 202 in a closed or clamped position. While the ligation clip applicator 202 is held in a clamped position, the cutting mechanism 204 is actuated, preferably by a plunger 224 located at the proximal end of the ligation-cutting tool 200. The plunger 224 is operably connected to the cutting blade 230, and biased proximally to urge the blade 230 into its normally retracted position. By

Re. 36,043

7

moving the plunger 224 distally, the physician causes the cutting blade 230 to likewise move distally and cut the side branch 22 of the blood vessel 20 which is retained between the yokes 208 and 210. When the physician releases the plunger 224, the plunger 224 (and thus the cutting blade 230) retracts to its original position. Manipulation of the handle 220 then separates the prongs 212A and 212B, leaving the clip in place on the severed portions of the side branch 22, and the ligation-cutting tool 200 is removed or relocated for reuse (the clips may be fed into place in the grooves of the prongs from a suitable clip magazine (not shown) to enable multiple ligations without removing the tool from the body).

The shaft 201 of the ligation-cutting tool 200 is a slender member that is longer than the lumen 38 of the endoscope 30. A housing 209 covers those mechanisms on the shaft 201 that transmit the manipulations of the handle 220 and the plunger 224 at the proximal end of the ligation-cutting tool 200 to the clipping and cutting motions, respectively, at the distal end of the ligation-cutting tool 200.

The side biting ligation-cutting tool 250 (FIG. 5) is used to sever and seal the distal end of the vessel being harvested. The side-biting ligation-cutting tool 250 is identical in operation to the ligation tool 200, except that the operative components at the distal end of the tool 250 are oriented generally normally to the axis of the tool 250. As seen in FIG. 5, the side biting ligation-cutting tool 250 has an elongated shaft 251, with a ligation clip applicator 252 and a cutting mechanism 254 at the distal end of shaft 251. The ligation clip applicator 252 includes a first yoke 258 and a second, opposed yoke 260. Each yoke in turn is forked at its distal end, forming two opposed prongs 262A and 262B, respectively. The prongs are aligned generally parallel and each has inner grooves 264 to retain ligation clips between each opposed pair of prongs 262A and 262B. The structure and operation of the ligation clip applicator 252 is similar to that illustrated in FIGS. 4A and 4B for the ligation-cutting tool 200.

The yokes 258 and 260 and the prongs 262A and 262B thereon oppose each other and serve to apply ligation clips (not shown in FIG. 5) to the distal end of the segment of the blood vessel being severed. When the ligation clips are thus held between the opposing prongs 262A and 262B of yokes 258 and 260, the generally U-shaped ligation clips aid in positioning and properly aligning the side biting ligation-cutting tool 250 and the blood vessel to be transected by providing an abutment for the blood vessel when the blood vessel is positioned between the yokes 258 and 260. When the yokes 258 and 260 are moved towards each other, the ligation clips are clamped onto the blood vessel therebetween and the blood flow through the blood vessel is halted at two slightly spaced-apart points (e.g., two clips are applied approximately 0.25 inches apart). When the ligation clip applicator 252 is activated and the yokes 258 and 260 clamp the ligation clips onto the blood vessel, the blood vessel is also held securely for cutting the blood vessel.

The cutting mechanism 254 on the side biting ligation cutting tool 250 includes a cutting blade 280 aligned between the prongs 262A and 262B. Again, the structure of the cutting mechanism for the tool 250 is quite similar to that illustrated in FIGS. 4A and 4B for the ligation-cutting tool 200. The blade 280 is positioned such that a cutting edge 282 of the blade 280 does not interfere with the alignment of the blood vessel between the yokes 258 and 260. The cutting blade 280 is normally retracted (as seen in FIG. 5) to allow the blood vessel to be positioned properly between the yokes 258 and 260. The cutting edge 282 of the blade 280 faces in

8

a transverse direction from the shaft 251 of the side biting ligation-cutting tool 250, and the cutting motion of the blade 280 is in a transverse direction (e.g., toward the blood vessel). The blade 280 is wide enough to complete sever the blood vessel between the two yokes 258 and 260. The cutting mechanism 254 is activated after the blood vessel has been ligated (i.e., the blood vessel has been clipped shut and blood flow halted) and while the blood vessel is still held securely in the yokes 258 and 260. After the blade 280 has severed the blood vessel, the blade 280 returns to its original retracted position.

The primary difference between the tool 200 and tool 250 is that the distal operative portion of the tool 250 is oriented at an angle generally ninety degrees opposed to the axis of the shaft 251 of the tool 250. The yokes 258 and 260 are thus oriented to straddle a blood vessel extending generally parallel to the shaft 251 to apply ligation clips thereto. After clips are applied, the yokes continue to hold the blood vessel to permit severing of the vessel using the blade 280. Other than the revision in orientation of the distal portion of the ligation-cutting tool 250, it operates in the same manner as the ligation-cutting tool 200.

The ligation clip applicator 252 and the cutting mechanism 254 are both actuated by mechanisms at the proximal end of the shaft 251 of the ligation-cutting tool 250. The ligation clip applicator 252 is preferably actuated by a scissors-type handle 270. Squeezing of the scissors-type handle 270 causes each pair of prongs 262A and 262B on the yokes 258 and 260 to move together, thereby compressing their respective ligation clips about the blood vessel. The scissors-type handle 270 includes a latching mechanism 272 which serves to secure the handle 270 and thus the ligation clip applicator 252 in a closed or clamped position. While the ligation clip applicator is held in a clamped position, the cutting mechanism 254 is actuated, preferably by a plunger 274 located at the proximal end of the ligation-cutting tool 250. The plunger 274 is operably connected to the cutting blade 280, and biased proximally to urge the blade 280 into its normally retracted position. By moving the plunger 274 distally, the physician causes the cutting blade 280 to likewise move distally and cut the blood vessel which is retained between the yokes 258 and 260. When the physician releases the plunger 274, the plunger 274 (and thus the cutting blade 280) retracts to its original position. Manipulation of the handle 270 then separates the prongs 262A and 262B, leaving the clips in place on the severed portions of the blood vessel, and the ligation cutting tool 250 is removed.

The shaft 251 of the side biting ligation-cutting tool 250 is a slender member that is longer than the lumen 38 of the endoscope 30. A housing 259 covers those mechanisms on the shaft 251 that transmit the manipulations of the handle 270 and the plunger 274 at the proximal end of the side biting ligation-cutting tool 250 to the clipping and cutting motions, respectively, at the distal end of the side biting ligation-cutting tool 250.

The suction-coagulator tool 300 (FIG. 6) is used to remove body fluids (e.g., blood) and reduce bleeding during the vessel harvesting procedure, and is of the type generally known in the art for this procedure. The suction-coagulator tool 300 has an elongated shaft 301 and includes a handle 310 attached to the proximal end of shaft 301. A suction tube 302 is attached to the proximal end of shaft 301 and extends to the distal end of shaft 301. At the distal end of shaft 301 the suction tube 302 is open for suctioning body fluids. Also attached to the proximal end of shaft 301 is a power cable 304 for supplying power for tissue coagulation. When button

Re. 36,043

9

308 on handle 310 is activated, the power is supplied to the distal end of shaft 301 to cauterize bleeding tissue, and thus to stop bleeding. The suction-coagulator tool 300 controls bleeding in two ways. The suction tube 302 may be used alone to suction any body fluids from the dissection area, or the coagulator may be used to cauterize the bleeding tissue.

### METHOD OF USE

The endoscope 30 and accompanying tools 100, 150, 200, 250 and 300 are used in combination for harvesting a vessel. After proper preparation of the incision site, the physician makes a small incision 350 (e.g., 3 cm long) over the proximal aspect of the blood vessel to be harvested (see FIGS. 1 and 9). The blood vessel 20 is exposed and dissected for a short length under direct vision. As seen in FIG. 9, the blood vessel 20 is then severed to expose a free end 352 and a free end 353 (which may be clipped as shown in FIG. 9). For example, to remove a saphenous vein, the incision 350 will be made at the groin over the saphenous vein and the vein will be dissected free from the junction of the common femoral vein. As shown in FIGS. 1 and 9, the gripping forceps 150 is inserted through the dissecting ring 110 of the dissecting tool 100, and the assembly of the dissecting tool 100 and the gripping forceps 150 is inserted through the lumen 38 of the endoscope 30 such that the distal ends of the dissecting tool 100 and gripping forceps 150 extend beyond the distal end of the lumen 38. The physician then grasps the free end 352 of the blood vessel 20 with the gripping forceps 150 and holds it under tension. The dissecting tool 100 is then advanced distally (together with the endoscope 30) over the distal end of the gripping forceps 150 and over the blood vessel 20. As the dissecting tool 100 is manipulated by the physician, the blood vessel 20 is dissected away from the surrounding connective tissue.

As illustrated in FIG. 10 (which has a portion of the patient's body broken away to show the invention in operation), the dissection process proceeds distally along the blood vessel 20, and the endoscope 30 is advanced along with the dissecting tool 100 into the incision 350. Until this point, the physician has been viewing the procedure under direct vision. Now, the physician switches to viewing the dissection process (occurring at the area immediately adjacent the distal end of the lumen 38) through the fiber optic viewing device 42 located at the distal end of the scope body 34 of the endoscope 30. The illumination source 40 provides adequate lighting for the physician to view the dissection and tool operations occurring within the patient via the monitor. Irrigant is introduced as necessary through the irrigation channel 48 of the endoscope 30 to keep blood or other body tissue from obscuring vision adjacent the distal end of the scope body 34 of the endoscope.

As the dissection tool 100 is advanced along the blood vessel 20, a side branch 22 of the blood vessel 20 may be encountered before the desired length of blood vessel 20 has been dissected. When the physician reaches a side branch 22 before obtaining the desired length of blood vessel 20, the ligation-cutting tool 200 is employed to sever the side branch 22 from the vessel being harvested (blood vessel 20).

When a side branch 22 is reached, the physician stops advancing the dissecting tool 100 and endoscope 30 and, if necessary, withdraws the dissecting tool 100 proximally from the side branch 22 to provide room for operation of the ligation-cutting tool 200. The ligation-cutting tool 200 is inserted into the proximal end of the lumen 38 and advanced distally through the lumen 38 and into the area distal of the scope body 34 of the endoscope 30. Using the illumination

10

source 40 and the viewing device 42, the physician positions the ligation-cutting tool 200 over the side branch 22 such that the side branch 22 is sitting in the yokes 208 and 210 (see FIG. 11). The physician then manipulates the handle 220 of the ligation-cutting tool 200 to actuate the ligation clip applicator 202. As the prongs 212A and 212B on each of the yokes 208 and 210 move toward each other, the ligation clips 216 are clamped about the side branch 22, thereby stopping blood flow through the side branch 22.

While the side branch 22 is held securely between the yokes 208 and 210 of the ligation clip applicator 202, the physician pushes the plunger 224 to activate the cutting mechanism 204. As shown in FIG. 12, the cutting blade 230 thus moves distally into and through the side branch 22, thereby severing the side branch 22 from the blood vessel 20 between the ligation clips 216. When the plunger 224 is released by the physician, the cutting blade 230 returns to its original retracted position. The handle 220 is then manipulated to separate the prongs 212A and 212B, and the ligation-cutting tool 200 is withdrawn proximally through the lumen 38 of the endoscope 30. The ligation-cutting tool 200 may then be prepared to be used again later in the procedure (i.e., reloaded with additional clips 216), if required.

After the ligation-cutting tool 200 has been removed from the endoscope, the dissecting tool 100 and endoscope 30 are again advanced distally along the blood vessel 20 (as previously described) until another side branch is reached. In this regard, the dissecting ring 110 is large enough to pass over the clipped and severed stumps of any side branches 22 which extend from the blood vessel 20. The ligation-cutting tool 200 is then used as previously described to sever additional side branches from the blood vessel 20. The procedure is repeated until the desired length of blood vessel 20 has been dissected free from the surrounding tissue and side branches. During the dissection procedure, the suction-coagulator tool 300 is used as required to control bleeding, again under the constant vigilance of the physician through the endoscope 30. During the entire procedure, the blood vessel 20 has been held in tension by the physician via the gripping tool 150. In addition, as more and more of the blood vessel 20 becomes dissected, the endoscope 30 is advanced distally into the patient's body and the blood vessel 20 is moved into the lumen 38 of the scope body 34.

When the desired length of blood vessel 20 has been dissected free from the surrounding connective tissue, the dissecting tool 100 is moved proximally away from the distal end of the dissected segment, and the side-biting ligation-cutting tool 250 is inserted into the proximal end of the lumen 38 and advanced distally through the lumen 38 into the area adjacent the distal end of the scope body 34 and the distal end of the dissected blood vessel 20. The side-biting ligation-cutting tool 250 is positioned such that the blood vessel 20 is between the first yoke 258 and the second yoke 260 of the ligation clip applicator 252. When the blood vessel 20 is properly positioned between yokes 258 and 260, the physician manipulates the handle 270 to actuate the ligation clip applicator 252. As the yokes 258 and 260 move toward each other, the yokes 258 and 260 act to pinch the ligation clips 266 over the distal end of the dissected blood vessel 20 (thus stopping blood flow through the blood vessel 20). While the blood vessel 20 is held securely by the ligation clip applicator 252, the physician pushes the plunger 274 to activate the cutting mechanism 254. The cutting blade 280 advances from the ligation clips 266 and through the blood vessel 20 to sever the blood vessel 20 into a freed section 360 having free end 352 (FIG. 10) and a free end 361

Re. 36,043

| 11 | 12 |

(FIG. 13) and a remaining section 362. When the plunger 274 is released by the physician, the cutting blade 280 returns to its retracted position. The handle 270 is manipulated to separate the prongs 262A and 262B, and the side-biting ligation-cutting tool 250 is withdrawn proximally through the lumen 38 of the endoscope 30. The tool 250 may apply ligation clips on sections 360 and 362, or just one clip on the remaining section 362 of the blood vessel 20.

The freed section 360 of the blood vessel 20 is now free of all connections to the patient's body and is substantially within the lumen 38 of the endoscope 30. While gripping the now dissected blood vessel 20 with the gripping forceps 150, the physician may simultaneously remove the scope body 34 of the endoscope 30 and the enclosed segment of blood vessel 20 from the body of the patient. After the endoscope 30 and freed section 360 of blood vessel 20 are removed from the patient, the physician closes the incision 350 in the patient's body to complete the vessel harvesting procedure. The freed section 360 of the blood vessel 20 may then be removed from the lumen 38 of the endoscope 30 and prepared for its intended end use. The vessel harvesting procedure has been accomplished with only a single small incision, yet the physician can see the entire working portion of the procedure for manipulation of the tools to accomplish dissection, ligation and severing of the freed section 360 of the blood vessel 20. This results in less trauma to the patient than was previously attainable, with a much more precise and efficient procedure, both in terms of affecting the tissue surrounding the dissected vessel, and in terms of the timing and control of the procedure by the physician.

Occasionally, it is desired to remove a continuous length of a blood vessel that is longer than the scope body of the inventive endoscope. In this instance, the physician is unable to advance the endoscope and its related tools far enough from the original small incision into the patient to harvest a segment of the desired length. If no endoscope scope body is long enough to harvest a blood vessel segment of the desired length, the physician may make a second incision in the patient adjacent that point on the blood vessel where the dissection has reached via the use of the endoscope and related tools through the first incision. This is illustrated in FIG. 14.

FIG. 14 illustrates a portion of a patient's leg. A first incision 350 has been made in the patient and the blood vessel 20 severed to create free ends 353 and 352. A portion of the desired segment of the blood vessel (to the left of the incision 350 in FIG. 14) has been dissected, ligated and clipped from the surrounding tissue and side branches 22, using the inventive endoscope and tools in a manner as discussed above. The desired segment of the blood vessel (designated as segment 400 in FIG. 14) is not severed using the side-biting ligation-cutting tool 250 through the scope body 34 of the endoscope 30. Instead, a second incision 450 is made in the patient adjacent that point where the dissection of the blood vessel 20 has reached. This second incision thus exposes that portion of the blood vessel 20 which has been dissected from the surrounding connective tissue of the patient's body (segment 400). The physician releases the free end 352 of the blood vessel 20 (which has been continually held by the gripping forceps 150) and proximally withdraws the endoscope 30 and all of its associated tools which are still in the patient's body. Working through the second incision 450, the physician then grips the exposed portion of the blood vessel 20 and pulls the dissected segment 400 of the blood vessel 20 through the second incision, in direction of arrow 455 as illustrated in FIG. 14.

Once the entire dissected segment 400 has been pulled out of the patient through the second incision 450, further

dissection of the remaining portion of the blood vessel 20 within the patient can continue using the inventive tools and method. As previously described, the gripping forceps 150 is inserted through the dissecting ring 110 of the dissecting tool 100 and the assembly of the dissecting tool 100 and the gripping forceps 150 is inserted into the proximal end of the lumen 38 and advanced distally through the lumen 38. The gripping forceps 150 is again used to hold the free end 352 of the segment 400 of the blood vessel 20 during the continued procedure. The endoscope 30 and dissecting tool 100 are distally advanced over the blood vessel 20 and into the patient's body through the second incision 450. The physician then continues to dissect the blood vessel 20 away from the surrounding connective tissue with the dissecting tool 100, ligating and severing side branches 22 as they are encountered using the ligation-cutting tool 150. The suction-coagulator tool 300 is also used as necessary during continued dissection and side branch severing. This process may be repeated until the desired length of blood vessel 20 has been harvested. At this point, the side-biting ligation-cutting tool 250 is employed through the second incision 450 and endoscope 30 to sever the blood vessel 20 from the patient in the desired length. The severed blood vessel is then withdrawn, along with the endoscope 30 and any related tools remaining within the patient, from the patient through the second incision 450. The severed blood vessel is removed from the endoscope and then treated as necessary for further use. The incisions 350 and 450 are then closed up, with minimal trauma to the patient. For instance, a two-step vessel harvesting procedure such as illustrated in FIG. 14 may result in the harvesting of a vessel as long as twelve to fifteen inches, with only two separate 3 cm long incisions made in the patient's skin. The entire procedure, as conducted using the inventive endoscope and its related tools, has been conducted under direct vision or endoscopic vision by the physician and is thus much more effective, efficient and elegant than prior vessel harvesting techniques.

CONCLUSION

The present invention permits a discrete segment of a blood vessel to be harvested with only a small incision in the body of a patient (or more than one small incision if a very long segment is desired). The inventive endoscope and its unique tools eliminate the need for a full length incision along the length of the blood vessel in order to harvest a segment of the blood vessel. Use of the inventive endoscope and tools eliminates the need for a second incision at the distal end of the desired segment of the blood vessel in order to sever the desired segment from the patient's body, and also allows vessel harvesting with a relatively small incision. Proximal incisions heal easier and more readily than distal incisions in most patients, and particularly for those with poor circulation in their extremities. The illumination source and the viewing device of the inventive endoscope allow the physician to directly view the dissection in process, which results in a very precise and controlled dissection of the blood vessel. At the same time, the use of the ligation-cutting tool and the side-biting ligation-cutting tool allows the physician to control bleeding by cutting and sealing off side branches to the blood vessel and the vessel itself in a secure and permanent manner. Nothing is inserted within the blood vessel being harvested during the procedure, so vessel integrity is maintained. Accordingly, undesired trauma to the vessel being harvested and to its surrounding connective tissue is minimized.

Although the present invention has been described with reference to preferred embodiments, workers skilled in the

Re. 36,043

<table>
<tr><td>13</td><td>14</td></tr>
</table>

art will recognize that changes may be made in form and detail without departing from the spirit and scope of the invention.

What is claimed:

1. A method of harvesting a section of a vessel from a patient's body as living tissue for use in a different environment of the patient's body comprising:

provicing an endoscope of the type having a scope body with a lumen extending longitudinally therethrough, with the lumen having a proximal end and a distal end, and means for viewing an area adjacent the distal end of the lumen, the lumen having a lateral dimension of size sufficient to accommodate the vessel and a tool for use in harvesting the vessel;

exposing a first end of the vessel section to be harvested through an incision in the patient's body;

gripping the first end with a gripping tool that has been inserted through the lumen of the endoscope; and

dissecting the vessel away from surrounding connective tissue of the patient's body with a dissecting tool inserted through the lumen of the endoscope, using the viewing means to view the dissection in process;

*cutting the vessel at proximal and distal ends of the vessel section; and*

*removing the vessel section from the patient's body, the steps of exposing, gripping, dissecting, cutting and removing being performed in a manner that minimizes damage to the endothelium of the vessel.*

2. The method of harvesting a vessel according to claim 1, including:

advancing the endoscope and the dissecting tool along the vessel until a side branch of the vessel is encountered.

3. The method of harvesting a vessel according to claim 2, including:

applying a ligation member to the branch and cutting the branch between the vessel and the ligation member with a ligating-cutting tool inserted through the lumen.

4. The method of harvesting a vessel according to claim 3, including:

repeating the advancing and applying steps until the endoscope is fully inserted or a desired length of the vessel is reached.

5. The method of harvesting a vessel according to claim 1, including:

controlling bleeding as necessary with a bleeding control tool inserted through the lumen.

6. The method of harvesting a vessel according to claim 1, including:

ligating and cutting the distal end of the vessel with a transecting tool inserted through the lumen, allowing a segment of the vessel to be removed without making a second incision in the patient's body.

7. The method of harvesting a vessel according to claim 1, including:

making a second incision in the patient's body spaced from the first incision;

exposing that portion of the vessel which has been dissected from surrounding tissue of the patient's body through the second incision in the patient's body;

gripping the exposed portion of the vessel which has been dissected and that has been inserted through the lumen of the endoscope;

advancing the endoscope over the vessel and into the patient's body through the second incision; and

continuing to dissect the vessel away from surrounding connective tissue of the patient's body with a dissecting tool inserted through the lumen of the endoscope, using the viewing means to view the continued dissection in process.

8. A method of removing a section of a vessel from a patient's body for use in a different environment comprising:

providing an endoscope of the type having a scope body with a lumen extending longitudinally therethrough, with the lumen having a proximal end and a distal end, and means for viewing an area adjacent to the distal end of the lumen, the lumen having a lateral dimension of size sufficient to accommodate that section of the vessel which is being removed and a tool for use in removing the section of the vessel;

exposing a portion of the section of the vessel to be removed through an incision in the patient's body;

gripping the exposed portion with a gripping tool that has been inserted through the lumen of the endoscope; and

dissecting the section of the vessel which is being removed from the patient's body with a dissecting tool also inserted through the lumen of the endoscope, using the viewing means to view the dissection process;

*cutting the vessel at proximal and distal ends of the vessel section; and*

*removing the vessel section from the patient's body, the steps of exposing, gripping, dissecting, cutting and removing being performed in a manner that minimizes damage to the endothelium of the vessel.*

9. The method of removing a section of a vessel according to claim 8, and further including:

removing the section of the vessel through the lumen of the endoscope.

10. The method of removing a section of a vessel according to claim 8, and further including:

advancing the endoscope and the dissecting tool along the vessel until a branch of the vessel is encountered.

11. The method of removing a section of a vessel according to claim 10, and further including:

applying a ligation member to the vessel branch and cutting the branch with a ligating-cutting tool inserted through the lumen.

12. The method of removing a section of a vessel according to claim 11, and further including:

repeating the advancing and applying steps until the endoscope is fully inserted or the desired amount of the vessel is dissected.

13. The method of removing a section of a vessel according to claim 8, and further including:

controlling bleeding as necessary with a bleeding control tool inserted through the lumen.

*14. The method of claim 1 further comprising re-using the vessel section as a fluid conduit in another part of the patient's body.*

*15. The method of claim 8 further comprising re-using the vessel section as a fluid conduit in a human body.*

*16. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*making an incision over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section through the incision;*

Re. 36,043

<table>
<tr><td>15</td><td>16</td></tr>
</table>

dissecting the vessel away from surrounding tissue of the patient's body until a desired length of vessel which exceeds the length of the incision has been dissected free from surrounding tissue;

severing the vessel at proximal and distal ends of the vessel section with at least one tool inserted through the incision; and

removing the vessel section through the incision, the steps of making an incision, exposing, dissecting, severing, and removing being performed in a manner that minimizes damage to the endothelium of the vessel.

17. The method of harvesting a vessel according to claim 16, including:

applying a ligation member to the vessel in a position distal to the distal end of the vessel section.

18. The method of harvesting a vessel according to claim 16, including:

controlling bleeding as necessary.

19. The method of harvesting a vessel according to claim 16, including:

applying a ligation member to a side branch of the vessel; and

severing the side branch of the vessel between the ligation member and the vessel.

20. The method of claim 16 further comprising re-using the vessel section as a fluid conduit in a human body.

21. The method of claim 16 further comprising re-using the vessel section as a fluid conduit in another part of the patient's body.

22. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:

making an incision in the patient's body over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;

exposing the first end of the vessel section to be harvested through the incision in the patient's body;

dissecting the vessel away from surrounding tissue of the patient's body; and

viewing the dissection of the vessel with a viewing device inserted through the incision;

severing the vessel at proximal and distal ends of the vessel section; and

removing the vessel section from the patient's body, the steps of making an incision, exposing, dissecting, viewing, severing and removing being performed in a manner that minimizes damage to the endothelium of the vessel.

23. The method of harvesting a vessel according to claim 22, including:

applying a ligation member to a side branch of the vessel; and

severing the side branch between the vessel and the ligation member.

24. The method of harvesting a vessel according to claim 23, including:

repeating the dissecting step until a desired length of the vessel section has been dissected.

25. The method of harvesting a vessel according to claim 24, including:

severing the distal end of the vessel section; and
removing the vessel section through the incision.

26. The method of harvesting a vessel according to claim 22, including:

repeating the dissecting step until a desired length of the vessel section has been dissected.

27. The method of harvesting a vessel according to claim 26, including:

severing the distal end of the vessel section; and

removing the vessel section through the incision.

28. The method of harvesting a vessel according to claim 22, including:

controlling bleeding as necessary.

29. The method of claim 20 further comprising re-using the vessel section as a fluid conduit in a human body.

30. The method of claim 22 further comprising re-using the vessel section as a fluid conduit in another part of the patient's body.

31. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:

providing a device having an elongated body, the body having a lumen extending longitudinally therethrough, the lumen having a proximal end and a distal end and having a lateral dimension of size sufficient to accommodate the vessel and a tool for use in harvesting the vessel;

exposing a first end of the vessel section to be harvested through an incision in the patient's body;

gripping the first end with a gripping tool that has been inserted through the lumen of the elongated body;

dissecting the vessel away from surrounding tissue of the patient's body with a dissecting tool inserted through the incision; and

viewing the dissection of the vessel from an area adjacent the distal end of the lumen of the elongated body;

severing the vessel at proximal and distal ends of the vessel section; and

removing the vessel section from the patient's body, the steps of exposing, gripping, dissecting, viewing, severing and removing being performed in a manner that minimizes damage to the endothelium of the vessel.

32. The method of harvesting a vessel according to claim 31, including:

advancing the elongated body and the dissecting tool along the vessel until a side branch of the vessel is encountered.

33. The method of harvesting a vessel according to claim 32, including:

applying a ligation member to the branch and cutting the branch between the vessel and the ligation member with a ligating-cutting tool inserted through the lumen.

34. The method of harvesting a vessel according to claim 33, including:

repeating the advancing and applying steps until the elongated body is fully inserted or a desired length of the vessel is reached.

35. The method of harvesting a vessel according to claim 31, including:

controlling bleeding as necessary with a bleeding control tube inserted through the lumen.

36. The method of harvesting a vessel according to claim 31, including:

ligating and cutting the distal end of the vessel with a transecting tool inserted through the lumen, allowing the vessel section to be removed without making a second incision in the patient's body.

Re. 36,043

## 17

*37. The method of harvesting a vessel according to claim 31, including:*

*making a second incision in the patient's body spaced from the first incision;*

*exposing that portion of the vessel which has been dissected from surrounding tissue of the patient's body through the second incision in the patient's body;*

*gripping the exposed portion of the vessel which has been dissected with a gripping tool that has been inserted through the lumen of the elongated body;*

*advancing the elongated body over the vessel and into the patient's body through the second incision; and*

*continuing to dissect the vessel away from surrounding tissue of the patient's body with a dissecting tool inserted through the second incision.*

*38. The method of claim 31 further comprising re-using the vessel section as a fluid conduit in a human body.*

*39. The method of claim 3 further comprising re-using the vessel section as a fluid conduit in another part of the patient's body.*

*40. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*making an incision over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section through the incision;*

*dissecting the vessel away from surrounding tissue of the patient's body with a dissecting tool inserted through the incision until a desired length of vessel which exceeds the length of the incision has been dissected free from surrounding tissue;*

*viewing the dissection of the vessel with a viewing device inserted through the incision;*

*severing the vessel at proximal and distal ends of the vessel; and*

*removing the vessel section from the patient's body, the steps of making an incision, exposing, dissecting, viewing, severing, and removing being performed in a manner that minimizes damage to the endothelium of the vessel.*

*41. The method of claim 40 further comprising re-using the vessel section as a fluid conduit in a human body.*

*42. The method of claim 40 further comprising re-using the vessel section as a fluid conduit in another part of the patient's body.*

*43. The method of harvesting a vessel according to claim 40, including:*

*applying a ligation member to the vessel in a position distal to the distal end of the vessel section.*

*44. The method of harvesting a vessel according to claim 40, including:*

*controlling bleeding as necessary.*

*45. The method of harvesting a vessel according to claim 40, including:*

*litigating a branch of the vessel; and*

*severing the branch of the vessel between the ligation and the vessel.*

*46. The method of harvesting a vessel according to claim 40 including maintaining the lumen of the vessel clear of any tools and other objects used in the harvesting procedure.*

*47. The method of harvesting a vessel according to claim 40 including making a second incision in the patient's body*

## 18

*spaced from the first incision, the second incision being substantially smaller than the length of the vessel section, and wherein the vessel section is removed through the second incision.*

*48. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*making an incision over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section through the incision;*

*dissecting the vessel away from surrounding tissue of the patient's body until a desired length of vessel which exceeds the length of the incision has been dissected free from surrounding tissue;*

*severing the vessel at proximal and distal ends of the vessel section with at least one tool inserted through the incision;*

*removing the vessel section through the incision; and*

*re-using the vessel section as a fluid conduit in a human body.*

*49. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*making an incision in the patient's body over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section to be harvested through the incision in the patient's body;*

*dissecting the vessel away from surrounding tissue of the patient's body; and*

*viewing the dissection of the vessel with a viewing device inserted through the incision;*

*severing the vessel at proximal and distal ends of the vessel section;*

*removing the vessel section from the patient's body; and*

*re-using the vessel section as a fluid conduit in a human body.*

*50. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*providing a device having an elongated body, the body having a lumen extending longitudinally therethrough, the lumen having a proximal end and a distal end and having a lateral dimension of size sufficient to accommodate the vessel and a tool for use in harvesting the vessel;*

*exposing a first end of the vessel section to be harvested through an incision in the patient's body;*

*gripping the first end with a gripping tool that has been inserted through the lumen of the elongated body;*

*dissecting the vessel away from surrounding tissue of the patient's body with a dissecting tool inserted through the incision; and*

*viewing the dissection of the vessel from an area adjacent the distal end of the lumen of the elongated body;*

*severing the vessel at proximal and distal ends of the vessel section;*

*removing the vessel section from the patient's body; and*

*re-using the vessel section as a fluid conduit in a human body.*

Re. 36,043

## 19

*51. A method of harvesting a section of a vessel from a patient's body for use in a different environment comprising:*

*making an incision over a first end of the vessel section to be harvested, the length of the incision being sufficient to accommodate at least one tool used in harvesting the vessel section but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section through the incision;*

*dissecting the vessel away from surrounding tissue of the patient's body with a dissecting tool inserted through the incision until a desired length of vessel which exceeds the length of the incision has been dissected free from surrounding tissue;*

*viewing the dissection of the vessel with a viewing device inserted through the incision;*

*severing the vessel at proximal and distal ends of the vessel;*

*removing the vessel section from the patient's body; and*

*re-using the vessel section as a fluid conduit in a human body.*

## 20

*52. A method of re-using a section of a vessel from a patient's body in the patient's body comprising:*

*making an incision over a first end of the vessel section, the length of the incision being sufficient to accommodate at least one tool used in the method but being substantially smaller than the length of the vessel section;*

*exposing the first end of the vessel section through the incision;*

*dissecting the vessel away from surrounding tissue of the patient's body with a tool inserted through the incision until a desired length of vessel which exceeds the length of the incision has been dissected free from surrounding tissue;*

*severing the first end of the vessel section with a tool inserted through the incision; and*

*re-using the vessel section as a fluid conduit in the patient's body.*

\*   \*   \*   \*   \*

# EXHIBIT B

US006830546B1

(12) **United States Patent**      (10) Patent No.:     **US 6,830,546 B1**
    Chin et al.                    (45) Date of Patent:      **Dec. 14, 2004**

(54) **DEVICE AND METHOD FOR REMOTE VESSEL LIGATION**

(75) Inventors: **Albert K. Chin**, Palo Alto, CA (US);
                **Edwin J. Hlavka**, Palo Alto, CA (US);
                **John P. Lunsford**, San Carlos, CA
                (US); **Jeffrey W. Baxter**, San Jose, CA
                (US)

(73) Assignee: **Origin Medsystems, Inc.**, Santa Clara,
               CA (US)

( * ) Notice: Subject to any disclaimer, the term of this
              patent is extended or adjusted under 35
              U.S.C. 154(b) by 130 days.

(21) Appl. No.: **10/052,016**

(22) Filed:     **Jan. 16, 2002**

**Related U.S. Application Data**

(63) Continuation of application No. 09/521,279, filed on Mar. 7,
     2000, now Pat. No. 6,348,037, which is a continuation of
     application No. 09/200,218, filed on Nov. 25, 1998, now Pat.
     No. 6,162,173, which is a continuation-in-part of application
     No. 09/102,723, filed on Jun. 22, 1998, now Pat. No.
     5,895,353.

(51) Int. Cl.[7] ............................................. A61B 17/02
(52) U.S. Cl. ........................... 600/206; 600/235
(58) Field of Search ................................. 606/204, 205,
                     606/206, 201, 210, 235, 159

(56)             **References Cited**

             U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 79,015 | A | 6/1868 | Schultz |
| 1,727,495 | A | 9/1929 | Wapper |
| 2,162,681 | A | 6/1939 | Ryan |
| 2,220,720 | A | 11/1940 | Leggiadro |
| 2,227,727 | A | 1/1941 | Leggiadro |
| 2,821,190 | A | 1/1958 | Chase |
| 3,313,294 | A | 4/1967 | Uddenberg |
| 3,357,433 | A | 12/1967 | Fourestier et al. |
| 3,835,841 | A | 9/1974 | Terada |
| 3,857,386 | A | 12/1974 | Ashbell |
| 3,866,601 | A | 2/1975 | Russell |

| | | | |
|---|---|---|---|
| 4,190,042 | A | 2/1980 | Sinnreich |
| 4,232,660 | A | 11/1980 | Coles |
| 4,428,746 | A | 1/1984 | Mendez |
| 4,557,255 | A | 12/1985 | Goodman |
| 4,651,733 | A | 3/1987 | Mobin-Uddin |
| 4,667,655 | A | 5/1987 | Ogiu et al. |
| 4,744,363 | A | 5/1988 | Hasson |
| 4,773,394 | A | 9/1988 | Reichstein et al. |
| 4,838,246 | A | 6/1989 | Hahn et al. |
| 4,858,595 | A | 8/1989 | Buess et al. |
| 4,874,375 | A | 10/1989 | Ellison .......................... 604/164 |
| 4,991,565 | A | 2/1991 | Takahashi et al. |
| 5,230,621 | A | * 7/1993 | Jacoby .......................... 433/29 |
| 5,251,613 | A | 10/1993 | Adair |
| 5,271,385 | A | 12/1993 | Bailey |
| 5,275,608 | A | 1/1994 | Forman et al. |
| 5,284,128 | A | 2/1994 | Hart |
| 5,337,736 | A | 8/1994 | Reddy |
| 5,339,803 | A | 8/1994 | Mayzels et al. |
| 5,345,927 | A | 9/1994 | Bonutti |
| 5,368,015 | A | * 11/1994 | Wilk |
| 5,370,109 | A | 12/1994 | Cuny |

          (List continued on next page.)

          FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 681 811 A2 | 11/1995 |
| EP | 0 761 171 A | 3/1997 |
| WO | WO 97-26831 | 1/1997 |

Primary Examiner—Cary E. O'Connor
(74) Attorney, Agent, or Firm—Fenwick & West LLP

(57)                **ABSTRACT**

A retractor and a surgical tool are positioned at the distal end
of the cannula. A dissection cradle is located at the distal end
of a distal portion of the retractor that is resiliently skewed
relative to the cannula axis, and includes two substantially
parallel, spaced legs with the retractor shaped in a loop
therebetween. The procedure includes locating a vessel and
side branch of interest and extending the retractor to retain
the vessel in the dissection cradle to urge the vessel away
from the axis of the cannula in order to isolate a side branch
for exposure to the surgical tool.

            **9 Claims, 13 Drawing Sheets**



US 6,830,546 B1

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,374,277 A | 12/1994 | Hassler |
| 5,395,383 A | 3/1995 | Adams et al. |
| 5,419,309 A | 5/1995 | Biehl |
| 5,450,842 A | 9/1995 | Tovey et al. |
| 5,501,654 A | 3/1996 | Failla et al. |
| 5,505,686 A | 4/1996 | Willis et al. |
| 5,512,037 A | 4/1996 | Russell et al. |
| 5,514,153 A * | 5/1996 | Bonutti ...................... 606/190 |
| 5,533,496 A * | 7/1996 | De Faria-Correa et al. . 128/898 |
| 5,535,759 A | 7/1996 | Wilk |
| 5,554,101 A | 9/1996 | Matula et al. |
| 5,558,620 A | 9/1996 | Heckele et al. |
| 5,564,615 A | 10/1996 | Bishop et al. |
| 5,569,183 A | 10/1996 | Kieturakis |
| 5,588,581 A | 12/1996 | Conlon et al. |
| 5,626,587 A | 5/1997 | Bishop et al. |
| 5,630,787 A | 5/1997 | Yabe et al. |
| 5,634,584 A | 6/1997 | Okorocha et al. |
| 5,656,012 A | 8/1997 | Sienkiewicz |
| 5,662,662 A | 9/1997 | Bishop et al. |
| 5,673,840 A | 10/1997 | Schulze et al. |
| 5,680,982 A | 10/1997 | Schulze et al. |
| 5,685,820 A | 11/1997 | Riek et al. |
| 5,690,606 A | 11/1997 | Slotman |
| 5,702,408 A | 12/1997 | Wales et al. |
| 5,704,534 A | 1/1998 | Huitema et al. |
| 5,713,505 A | 2/1998 | Huitema |
| 5,716,352 A | 2/1998 | Viola et al. |
| 5,722,934 A | 3/1998 | Knight et al. |
| 5,738,628 A | 4/1998 | Sierocuk et al. |
| 5,762,606 A | 6/1998 | Minnich |
| 5,843,121 A | 12/1998 | Yoon |
| 5,857,961 A | 1/1999 | Vanden Hoek et al. |
| 5,895,352 A | 4/1999 | Kleiner |
| 5,895,353 A | 4/1999 | Lunsford et al. |
| 5,897,487 A | 4/1999 | Ouchi |
| 5,913,870 A * | 6/1999 | DeFonzo et al. ........... 606/190 |
| 5,938,620 A | 8/1999 | Daxer |
| 5,957,936 A | 9/1999 | Yoon et al. |
| 6,162,173 A | 12/2000 | Chin et al. ................. 600/235 |
| 6,176,825 B1 * | 1/2001 | Chin et al. ................. 600/205 |
| 6,520,975 B2 | 2/2003 | Branco |

\* cited by examiner



*FIG. 1*



*FIG. 2A*



*FIG. 2B*



*FIG. 3A*



*FIG. 3B*



*FIG. 3C*



**FIG. 4A**



**FIG. 4B**



**FIG. 5A**



**FIG. 5B**



*FIG. 6A*



*FIG. 6B*



*FIG. 6C*



*FIG. 7A*



*FIG. 7C*



*FIG. 7B*



*FIG. 7D*



*FIG. 8A*



*FIG. 8B*



*FIG. 9A*



*FIG. 9B*

**U.S. Patent**    Dec. 14, 2004    Sheet 7 of 13    US 6,830,546 B1



*FIG. 9C*



*FIG. 9D*



*FIG. 9E*



*FIG. 9F*



*FIG. 9G*



*FIG. 10A*    *FIG. 10B*

    

*FIG. 10C*    *FIG. 10D*



*FIG. 11*



*FIG. 12*



*FIG. 15*



*FIG. 13*



*FIG. 14A*

*FIG. 14B*

Case 3:08-cv-01735-JSW    Document 1-4    Filed 04/01/2008    Page 15 of 22



*FIG. 16A*



*FIG. 16B*



*FIG. 16C*



FIG. 17



FIG. 18

US 6,830,546 B1

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# DEVICE AND METHOD FOR REMOTE VESSEL LIGATION

## CROSS REFERENCE TO RELATED APPLICATIONS

The present application is a continuation of application Ser. No. 09/521,279 filed on Mar. 7, 200, now U.S. Pat. No. 6,348,037 which is a continuation of application Ser. No. 09/200,218 filed on Nov. 25, 1998, now U.S. Pat. No. 6,162,173, and a continuation-in-part application of application Ser. No. 09/102,723 filed on Jun. 22, 1998 now U.S. Pat. No. 5,895,353, which are incorporated herein in their entirety.

## FIELD OF THE INVENTION

This invention relates to a cannula used for vessel retraction, and more particularly to a cannula and method that includes an endoscopic retractor for vessel ligation.

## BACKGROUND OF THE INVENTION

Certain cannulas have surgical tools located within the cannula for performing surgical operations on a vessel of interest. The cannula is inserted into a surgical site with the distal end of the cannula positioned near the vessel of interest. An endoscope positioned within the cannula allows the surgeon to view the target area, and allows the surgeon to position the surgical tool correctly. One common procedure is to ligate a vessel or other tissue by tightening a suture loop tied as a slipknot on the vessel before transection to provide hemostasis to the vessel.

However, surgeons encounter several difficulties in ligation procedures. In one ligation procedure, a second incision must be made at the opposite end of the vessel of interest to ligate and transect the vessel. Multiple incisions are invasive and should be minimized if possible. In order to avoid this second incision, some conventional methods require tying a suture loop around the vessel, and pushing the loop along the vessel with a knot pusher until the opposite end is reached. Then, the loop is tightened to provide ligation. However, this procedure is difficult because the slipknot often catches on stumps of cut tributaries or other tissue, and then constricts around the vessel at the wrong position. Also, there is no easy method for transecting the vessel after the suture loop is tied to the vessel without potentially prematurely severing the suture.

Thus, a device and method is needed to allow remote, one-incision, ligation of a vessel which allows a suture loop to be moved reliably to the site of interest, and ensures that the transection instrument is able to transect the vessel, and cut the suture.

## SUMMARY OF THE INVENTION

In accordance with the present invention, a retractor is positioned within a cannula with a dissection cradle end of the retractor positioned at the distal end of the cannula. The retractor includes a first portion that has an axis approximately parallel to a central axis of the cannula, and a second portion that has an axis which is at an angle with respect to the central axis of the cannula. The dissection cradle is located at the distal end of the second portion of the retractor. In another embodiment, the retractor includes two legs having substantially parallel axes that selectively protrude from the distal end of the cannula. The protruding legs support the dissection cradle formed in the shape of a loop that is positioned in a plane skewed relative to the axes of the

legs, with a bottom of the loop directed away from the cannula. Thus, in operation, when the surgeon locates a vein and side branch of interest, the surgeon extends the retractor to cradle the vein in the dissection cradle. Once cradled, the retractor may be fully extended, pulling the vein away from the axis of the cannula, causing the side branch to be isolated and exposed to a surgical tool. The surgical tool may then be extended from within the cannula to operate on the isolated and exposed side branch.

In another embodiment, the top of the loop of the dissection cradle is flat and thin, allowing atraumatic support of the vein, and minimizing contact between the retractor and the surgical tool. In yet a further embodiment, the retractor includes a single leg with the loop formed by the one leg of the retractor, and with a stopper coupled to the distal end of the retractor. In still another embodiment, the cannula comprises a sliding tube which encases the retractor, and in a first position is extended out to encase the second portion of the retractor, and in a second position is extended to encase only the first portion of the retractor. In response to being in the first position, the second and first portions of the retractor are both approximately parallel to the axis of the cannula. In the second position, the second portion of the retractor is skewed relative to the axis of the cannula.

In accordance with an alternate embodiment of the present invention, a retractor is positioned within a cannula with a dissection cradle end of the retractor positioned at the distal end of the cannula. The dissection cradle comprises a shoulder part and a curved channel part. Suture forming a suture loop is threaded through a hole in a tension mount that is fixed to the distal end of the cannula and is abutted against the distal end of the shoulder. Upon advancement to the surgical site of interest, the suture loop is safely maintained in place due to the tension provided by the tension mount and the support provided by the shoulder. The curved channel provides a groove in which the vessel of interest may be cradled. Upon retraction of the retractor, the suture loop is displaced onto the vessel at the desired position for ligation. In one embodiment, the loop is tightened by detaching the proximal end of the suture from the cannula and pulling on the suture, constricting the suture loop. In an alternate embodiment, a manual controller for retracting the retractor is attached to the proximal end of the suture. Upon slidable retraction of the manual controller, the retractor is retracted, the loop is displaced onto the vessel, and the loop is tightened.

In a further embodiment, a transecting device is positioned within the cannula. The distal end of the tension mount is positioned to allow the distal end to be proximal to the shoulder of the dissection cradle responsive to the shoulder being in an axial position relative to the tension mount. This results in the suture and vessel being reliably positioned within reach of the transecting device for transection of the vessel and cutting of the suture.

Finally, in a preferred embodiment, the retractor has a distal end having an axis skewed relative to the central axis of the cannula, thus facilitating accurate positioning of the vessel and suture for transection and cutting, and ensuring the proper displacement of the suture loop onto the vessel in response to the retraction of the retractor.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a preferred embodiment of cannula **100** showing retractor **112** in an extended position.

FIG. 2a is a cut-away side view of retractor **112** and cannula **100**.

US 6,830,546 B1

3

FIG. 2*b* is a top view of retractor 112.

FIG. 3*a* is a perspective side view of cannula 100 with a saphenous vein positioned within the cradle 116.

FIG. 3*b* is a perspective side view of the distal end 122 of cannula 100 in an embodiment in which an endoscope 126 and a surgical tool 120 are present and partially extended.

FIG. 3*c* is a front view of the distal end 122 of cannula 100 in which the surgical tool 120 and the retractor 116 are partially extended, and an endoscope 126 is present.

FIG. 4*a* is a cut-away top view of cannula 100.

FIG. 4*b* is a cut-away side view of cannula 100.

FIG. 5*a* is a cut-away view of a sliding tube embodiment of cannula 100 in a first position.

FIG. 5*b* is a cut-away view of the sliding tube embodiment of FIG. 5*a* in a second position.

FIG. 6*a* is a cut-away view of an embodiment of cannula 100 having an angling device 140.

FIG. 6*b* is a cut-away side view of the apparatus illustrated in FIG. 6*a* in which the retractor 112 is extended and the angling device 140 is actuated.

FIG. 6*c* is a cut-away side view of the angling device embodiment in which the angling device 140 is in a separate lumen from the retractor 112.

FIG. 7*a* is a cut-away side view of a twistable retractor 112 in a straight position.

FIG. 7*b* is a side view of the retractor 112 of FIG. 7*a*.

FIG. 7*c* is a cut-away side view of twistable retractor 112 in a crossed position.

FIG. 7*d* is a side view of the retractor 112 of FIG. 7*c*.

FIG. 8*a* is a cut-away side view of the handle 104.

FIG. 8*b* is a cut-away side view of an alternate embodiment of handle 104.

FIG. 9*a* is a side view of cradle 116.

FIG. 9*b* illustrates a first alternate embodiment of cradle 116.

FIG. 9*c* illustrates multiple views of a second alternate embodiment of cradle 116.

FIG. 9*d* illustrates multiple views of a third alternate embodiment of cradle 116.

FIG. 9*e* illustrates multiple views of a fourth alternate embodiment of cradle 116.

FIG. 9*f* illustrates multiple views of a fifth alternate embodiment of cradle 116.

FIG. 9*g* illustrates multiple views of an embodiment of cradle 116 having a spur.

FIG. 10*a* illustrates a top view of an embodiment of the cradle 116 of FIG. 9*c* without a "C" ring.

FIG. 10*b* illustrates a side view of the cradle 116 of FIG. 10*a*.

FIG. 10*c* illustrates a top view of the cradle 116 of FIG. 9*c* with the "C" ring attached.

FIG. 10*d*

illustrates a side view of the cradle 116 of FIG. 10*c*.

FIG. 11 illustrates a perspective side view of cradle 312 for remotely ligating vessel.

FIG. 12 illustrates a perspective side view of cradle 312 in operation.

FIG. 13 illustrates a perspective side view of cannula 100 having a dissection cradle 312.

FIG. 14*a* illustrates a perspective side view of cannula 100 with retractor 112 extended.

4

FIG. 14*b* illustrates a perspective side view of cannula 100 with a retractor 112 retracted.

FIG. 15 illustrates a perspective side view of cannula 100 with transection device 316.

FIGS. 16*a–c* illustrates multiple views of tension mount 308.

FIG. 17 is a flowchart illustrating the process of remote ligation of a vessel in accordance with the present invention.

FIG. 18 is a flowchart illustrating the process of remote ligation and vessel harvestation under gas insufflation.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 illustrates a perspective view of a preferred embodiment of cannula 100 showing retractor 112 in an extended position. Cannula 100 includes an outer housing of bioinert material such as polymed UD that may be approximately 12″ to 18″ in length. The proximal end of the cannula 100 is disposed in handle 104 that includes a button 106 which is coupled to retractor 112 for controlling the translational movement of retractor 112, as described in more detail below.

The distal end of the cannula houses a retractor 112, and optionally an endoscope 126 and a surgical tool 120, described below. FIG. 2*a* illustrates the retractor 112 in more detail. In one embodiment, retractor 112 is formed of resilient wire which has a smooth bend intermediate to a first portion 110 and a second portion 114 of the retractor. The retractor 112 is described as having two portions for ease of description, although the retractor 112 may be formed as an integrated structure. However, retractor 112 may also be manufactured from two separate portions 110, 114 that are coupled together. The first portion 110 of the retractor 112 is positioned within the cannula 100 with the axis 111 of the first portion 110 approximately parallel to the axis 101 of the cannula 100. The second portion 114 is positioned to bend away from the central axis 101 of the cannula. The angle 117 of displacement between the axis 115 of the second portion and the central axis 101 of cannula 100 may be any angle from zero to 180 degrees. The second portion 114 includes a dissection cradle 116 at the distal end of the second portion 114. The retractor 112 may be formed of bioinert material such as stainless steel, or a polymer such as nylon or polyethelethine, or other appropriately strong and springy plastic. In one embodiment, the retractor 112 includes a coating for lubrication, insulation, and low visual glare using, for example, parylene or nylon 11.

FIG. 2*b* illustrates the retractor 112 formed with two legs. The legs 141, 142 of the retractor 112 at the distal end form the dissection cradle 116 in a loop or "U" shape, as shown in FIG. 2*a*. The top portion 144 of the U-shaped bend is preferably flattened to provide additional surface area for atraumatically supporting a vein 118 or vessel of interest. The side arches 128 of the dissection cradle 116 are used for skeletonizing or dissecting the vein from the surrounding tissues, as well as acting as walls to keep the vessel captured within the arch. The several embodiments of dissection cradle 116 are described in more detail below.

FIG. 3*a* illustrates a perspective view of the cannula 100 in accordance with the present invention with the retractor fully extended, holding a saphenous vein 118, and also illustrates an external surgical tool 120 disposed adjacent the cannula 100 for performing a surgical operation, for example, severing a tributary or side branch of the vein 118. The vein is positioned within the side arches 128 of the cradle 116. The dissection cradle 116 may be used to cradle

US 6,830,546 B1

5

a vein, vessel, tissue or organ of interest, and surgical tool 120 may be any surgical tool suitable for performing a surgical procedure near the dissection cradle 116.

FIG. 3b illustrates a perspective view of cannula 100 in an embodiment in which the surgical tool 120 is positioned within the cannula 100, and an endoscope 126 is present. In this embodiment, cradle 116 preferably overlays the endoscope 126 with sufficient clearance to facilitate relative movements thereof. However, the endoscope may also be located adjacent the surgical tool 120. In one embodiment, endoscope 126 is positioned with cannula 100 to allow a clear field of view upon extension of the retractor 112. Surgical tool 120 is illustrated as scissors, used to sever a tributary or side branch of a saphenous vein 118. In this embodiment, surgical tool 120 is maximally displaced from the cradle 116 at the cannula end 122. More specifically, as shown in FIG. 3c, the "U"-shaped loop 129 of the cradle 116 is closest to the surgical tool 120. This ensures that a vein 118 or other tissue of interest is retracted away from the surgical tool 120 to facilitate manipulating the surgical tool 120 relative to the side branch or other tissue.

FIG. 4a is a cut-away top view of cannula 100. The retractor 112 is slidably positioned within minor lumens 113 along the length of the cannula 100 within close tolerances in order to position the retractor 112 stably within the cannula 100. For example, in one embodiment retractor legs 141, 142 are approximately 0.045 inches in diameter and the lumens 113 encasing the legs 141, 142 are approximately 0.080 inches in diameter, as friction between the legs of the retractor 112 and the lumens 113 holds the retractor stably within the cannula. This configuration restricts rotational movement of the retractor to provide more stable retraction as compared with conventional retractors. The legs 141, 142 of the retractor 112 are formed of flexible, resilient material and are retained within the lumen 113 in substantially straight or flat orientation, but may return to a material bend or curve, as illustrated in FIG. 5a, as the retractor 112 is extended from the distal end of the cannula 100.

The leg 141 of the retractor 112 passes through a sliding gas or fluid seal 130 at the proximal end of the lumen 113. The leg 141 of the retractor 112 passes out of the cannula 100 and into handle 104 for attachment to a slider button 106 for facilitating translational movement of the retractor 112 from the proximal or handle end of the cannula 100. However, other types of control devices such as knobs, grips, finger pads, and the like may be linked in conventional ways to the retractor 112 in order to manually control the translational movement of retractor 112. In one configuration, the proximal end of leg 141 is bent relative to the axis of the cannula, and the button 106 is attached to the bent position of the leg 141 to facilitate moving the button 106 and the retractor 112 translationally under manual control. The button 106 preferably includes lateral grooves to prevent finger or thumb slippage during sliding manipulation of the retractor 112.

Thus, in the operation of a preferred embodiment, a user actuates the slider button 106 to extend retractor 112 out of the lumen 113 at the distal end of the cannula 100. In one embodiment, the resilient retractor 112 is formed in a smooth bend, as shown in FIG. 2a, and gradually deflects away from the central axis 101 of the cannula 100 as the retractor is extended. Upon encountering the target vessel or tissue of interest, the vessel is restrained in the cradle 116, and a lateral resilient force is exerted on the target vessel in a direction away from the cannula. The vessel is thus pushed away from the axis of the cannula 100, isolating it from surrounding tissue or adjacent vessels such as tributaries or

6

side branches. As a tributary is thus isolated, a surgical tool 120 such as cauterizing scissors may be safely employed to operate on the tributary without harming the saphenous vein 118. When retracted into the cannula 100, the retractor 112 is again resiliently straightened or flattened.

In an alternate embodiment as illustrated in FIGS. 5a and 5b, a sliding tube 132 is added to provide operational versatility to cannula 100. In a first position, the sliding tube 132 is retracted and the retractor 112 protrudes from the distal end at an angle with respect to the central axis 101 of the cannula 100. In a second position, the sliding tube 132 is extended out, temporarily straightening the retractor 112. As illustrated in FIG. 5a, a sliding tube 132, in a first position encases the retractor 112 up to the point at which the retractor 112 curves away from the central axis 101 of the cannula thus allowing the retractor 112 to displace and isolate a target vessel. The proximal end of the sliding tube 132 is linked to button 107 for translationally moving retractor 112 as well as actuating the sliding tube 132. In one embodiment, as illustrated in FIG. 5a, the sliding tube 132 is in a first position with the button 107 in an upright position. A spring 134 is coupled between a support structure 135 and the proximal end 137 of the sliding tube 132. In the first position of sliding tube 132, the spring 134 is extended fully and exerts little or no force on the sliding tube 132. Of course, sliding tube 132 may be manually manipulated without linkage to a button 107.

To extend the sliding tube 100, button 107 is pushed down. As illustrated in FIG. 5b, the button 107 has a cam surface 136 which pushes on the proximal end 137 of the sliding tube 132 as the button 107 is pressed. The sliding tube 132 is pushed forward, overcoming the resilient force of spring 134, to encase the retractor 112 and decrease angle 117 between the distal end of the retractor 112 and the central axis 101 of the cannula 100. Upon releasing the button 107, the spring force urges the proximal end 137 of the sliding tube 132 back toward the first position against button 107. The sliding tube 132 is formed of material having sufficient strength to force the retractor 112 to straighten out the angle 117, and the retractor 112 is formed of resilient material having a sufficient flexibility to straighten out the angle 117 in response to a tube 132 being slid over the retractor 112, but having sufficient rigidity to cradle and dissect a target vessel. Resiliency of the retractor 112 ensures return to the downwardly-curved shape after being released from tube 132. Thus, in accordance with this embodiment, a user may employ the curved retractor for certain applications and employ the straightened form for other applications. A manual actuator may be configured in other ways than button 107 to extend the sliding tube 132 in response, for example, to being pulled up instead of pushed down.

Another embodiment employs a retractor 112 which has a naturally straight shape. As illustrated in FIGS. 6a and 6b, an angling device 140 is disposed between the distal end of the retractor 112 and the proximal end of the cannula. The angling device 140 may be positioned within the same lumens 113 as the retractor 112 and preferably may comprise two wires coupled to points below the cradle 116 of the retractor 112 substantially in parallel positions on each of the legs 141, 142.

Upon extending the retractor 112 using button 106, the angling device 140 is extended with the retractor 112. The angling device 140 is coupled to a handle 145 at the proximal end of the cannula 100 to facilitate establishing an angle in the retractor 112 by pulling with a backward force on the angling device 140. As illustrated in FIG. 6b, after the

US 6,830,546 B1

7

retractor 112 is extended, the angling device 140 is actuated and a bend is created in the retractor 112 as the backward force exerted on the distal end of the retractor is exerted against the relatively fixed position of the retractor legs 141, 142 disposed within the lumens 113. As shown in FIG. 6c, the angling device 140 may also be located in a separate lumen 202 from the retractor 112 with part of the angling device 140 positioned outside of the cannula 100 when the retractor 112 is in the retracted position.

FIG. 7a illustrates another embodiment of cannula 100 in which the retractor 122 is pre-formed with one leg 141 of the retractor 112 bent at an angle at its proximal end skewed to the axis of the distal end of the other leg 142. The bent portion of the leg 141 may be linked to a sliding knob 144 for convenient manual manipulation of this embodiment of the invention. Upon sliding the knob 144, the leg 142 coupled to knob 144 is twisted rotationally. The two legs 141, 142 of retractor 112 are coupled together via cradle 116. The axis of the second portion of the retractor 112 in the first position is at a first angle 117 to the axis of the cannula 100, as shown in FIG. 7b. As knob 144 is moved, leg 141 is rotated and crosses under leg 142, as shown in FIG. 7c. This causes cradle 116 to flip 180 degrees and bends the retractor 112 at a second angle 119, as shown in FIG. 7d. Thus, if a vessel is disposed on one side of cradle 116 or cannula 100 while the retractor 112 is in the first position, then upon rotating the knob 144, the vessel is transported to the other side of the cannula 100. This allows the user to isolate the vessel by simply actuating knob 144.

FIG. 8a illustrates a cut-away side view of button 106 on the handle 104 of cannula 100, with an encompassing 126 positioned within cannula 100. As mentioned above, button 106 is coupled to one leg 141 of the proximal end of retractor 112. Sliding the button 106 in groove 146 translationally moves the retractor 112. Groove 146 is preferably minimally wider than the shaft of button 106 to minimize excessive horizontal movement of button 106 while still allowing smooth translational movement of button 106. As illustrated in FIG. 8b, the button 106 may include locking or ratcheting teeth 152 to give tactile feedback of its location, and to positively retain the button and the associated leg 141 in an extended or retracted position. Several mating teeth 148 are located underneath groove 146, and a spring member 150 is attached to button 106 to exert pressure against the base of groove 146, to engage mating teeth 148, 152. When a force is applied on the top of button 106, the interlocking sets of teeth are disengaged and button 106 can move freely. Upon achieving the desired extension or retraction of the leg 141, button 106 is released and is retained place by the engaged teeth 148, 152.

FIG. 9a illustrates a top view of cradle 116 in an embodiment in which the cradle 116 is formed by two legs 141, 142 of retractor 112. The distal end of the legs form "U"-shaped side guides. The top 144 of the distal portion of the "U" is preferably flattened. This provides atraumatic support for the target vessel retained within cradle 116. Additionally, by minimizing the thickness of distal portion 144, contact with other devices in close proximity with retractor 112 is minimized.

The cradle 116 may have other effective shapes, for example, as illustrated in FIG. 9b in which a "C" ring element is attached to the cradle 116. The "C" ring may have a small hole 200 in one side with an axis approximately parallel to the axis of the retractor 112. This hole 200 is used to hold suture or other ligating materials, and may also be used as a knot pusher. As shown in FIGS. 10a and 10b, in an alternate embodiment of the embodiment

8

of FIG. 9b, the retractor 112 is formed and flattened and a "C"-shaped ring is coupled to the retractor 112 by, for example, gluing or molding the "C" ring to the distal end of the retractor 112, as shown in FIG. 10c and 10d.

Referring back to FIGS. 9c, 9d, and 9e, the side guides of the cradle may include a loop 129 in a "V" shape, an arced "U" shape, or a semi-circular shape. In one embodiment, as illustrated in FIG. 9f, the retractor 112 has only one leg 141, and the cradle 116 is formed by the leg 141. A stopper 160 is coupled to the end of the leg 141 to serve as a guide to retain the target vessel, and add a blunt surface to the end of the wire, for example, for pushing and probing tissue. FIG. 9g illustrates a retractor 112 having a spur 204 formed in one or both legs 141, 142 for allowing the retractor 112 to be used for dissection. Sinusoidal, half-sinusoidal, and other geometric configurations may be used equally effectively as the shape of loop 129 in accordance with the present invention.

FIG. 11 illustrates an alternate dissection cradle 312 for use in remote vessel ligation. Remote vessel ligation as discussed above is necessary to provide hemostasis to a vessel or other tissue after the vessel has been transected. In accordance with the present invention, hemostasis is accomplished by tightening suture formed in a loop adjacent the point of transection of the vessel. However, it is preferable to provide hemostasis to the vessel without incising the body a second time at the point of transection. The cannula 100 and dissection cradle 312 provide this functionality.

At the distal end of the retractor 312, a shoulder part 300 is preferably formed of a rigid plastic encapsulating the distal end of the retractor 112. A curved channel part 304 is attached to the shoulder 300. The curved channel 304 is formed in the shape of a "C" as shown. The curve of curved channel 304 exposes a portion of the distal face of the shoulder 300, upon which a suture loop 328 may be abutted, as shown in FIG. 12. Other shapes, such as those shown in FIGS. 9a–e, may also be used as curved channel 304.

FIG. 12 illustrates the manner in which the suture loop 328 is transported safely to the point of transection. The loop 328 is formed as a slipknot, which may be cinched tighter by exerting a backwards force on the free end of the suture 320. The suture loop 328 is tied around the vessel and the curved channel part 312, and is abutted against the shoulder 300. Next, the loop 328 is tightened onto the curved channel 304 by pulling back on the free or proximal end of the suture 320. The loop 328 is tightened sufficiently to permit safe advancement, but is provided with sufficient slack to allow displacement of the loop 328 onto the vessel adjacent the point of transection upon retraction of the retractor 312 into the cannula 100.

One embodiment of the present invention for exerting a backward or disengaging force on the loop 328 is shown in FIG. 13. FIG. 13 illustrates a tension mount 308 attached to cannula 100 for providing secure transport of the suture 320 to the surgical site of interest and for providing a controlling mechanism for tightening the suture loop 328 around the vessel when ligation is desired. The tension mount 308 is also formed of rigid plastic with some flexibility to allow other surgical tools 120 (not shown) to extend beyond the distal end of the tension mount 308, and to allow atraumatic advancement of the tension mount 308 through the body. The distal end of the tension mount 308 includes a hole 324 through which the suture is threaded to tighten the suture loop 328. The distal end of the tension mount 308 protrudes toward the central axis of the cannula 100. This ensures that the vessel and the suture will be in the optimal position for

US 6,830,546 B1

9                                                                                      10

transection or cutting after the loop 328 has been displaced onto the vessel. Additionally, the forward angle of the tension mount 308 also ensures that the loop 328 will be displaced onto the vessel upon retraction of the retractor 312, as discussed in greater detail below. The length of the tension mount 308 is chosen to allow the cradled vein to remain in endoscopic view upon advancement. Alternatively, a long knot pusher may be used in place of tension mount 308. The suture 320 is looped around the vessel and the curved channel 304, previously described. However, the free end of the suture 320 is threaded through a hole in the long knot pusher disposed within the cannula 100. The cannula 100 and knot pusher are advanced to the point of transection. Displacement of the loop 328 occurs by advancing the knot pusher while maintaining the position of the dissection cradle 312 relative to the vessel. After the loop 328 is displaced onto the vessel, the loop 328 is tightened by pulling backward on the suture 320. The long knot pusher may contain a lumen which runs the length of the cannula 100 or it may contain a shorter lumen which starts at the tip of the cannula and exits a side of the cannula 100 after a short distance proximally.

FIG. 14a illustrates the operation of the cannula 100 which has a tension mount 308. The cradle 312 holds a vessel 330. The vessel 330 is safely cradled in the curved channel 304 as the cannula 100 is advanced. The suture 320 is threaded through the hole 324 disposed in the distal end of the tension mount 308. The distal end of the suture 320 is then formed into a suture loop 328 around the vessel 330, and is abutted against the shoulder 300. In this embodiment, the proximal end of the suture 320 is wrapped around a cleat 332 on button 106 at the proximal end of the cannula 100. The loop 328 is tightened around curved channel 304 by winding the proximal end of the suture 320 around the cleat 332 which has the effect of pulling on the suture loop 328 and cinching the knot tightly around the curved channel 304 against the shoulder 300. The suture loop 328 may now be safely advanced to the surgical site as excessive slack does not occur in the loop 328, which would cause the loop 328 to be dislodged from the cradle 302. In an alternate embodiment, the loop 328 is tightened responsive to the sliding of the button 106. The button 106 has a lock with a release mechanism which restricts the sliding of the button 106. When the loop 328 requires tightening after displacement onto the vessel, the lock is released and the button 106 is retracted. This embodiment ensures that the surgeon does not accidentally dislodge loop 328 from the shoulder 300 by prematurely retracting the retractor 312 into the cannula 100.

Upon reaching the site of interest, the loop 328 is displaced onto the vessel 330 by sliding a manual controller backwards, causing the retractor 112 to retreat to an axial position. In the embodiment of FIGS. 14a and b, the loop 328 is displaced by sliding the button 106 backwards. Upon sliding the button 106 backwards, as shown in FIG. 14b, the cradle 312 is retracted into cannula 100, causing the loop 328 to be forcibly displaced from the shoulder 300 of the dissection cradle 312 onto the vein 330 at the desired location.

After displacement onto the vessel 330, a knot tightener is then used to tighten the suture loop 328 onto the vessel 330 to provide hemostasis. In the embodiment of FIGS. 14a and b, the loop 328 is tightened onto the vessel 330 as the proximal end of the suture 320 is wound around the cleat 332. The proximal end of the suture 320 could also simply be detached from the proximal end of the cannula 100, and the loop 328 tightened by pulling on the free end of the

suture 320. Alternatively, the loop 328 may be tightened by fixing the proximal end to the button 106. Sliding the button 106 towards the proximal end of the cannula 100 exerts a backwards force on the loop 328, tighten the loop 328.

FIG. 15 illustrates the use of the transection instrument 316 in accordance with the present invention. The transection instrument 316 is preferably endoscopic shears disposed within cannula 100. The shears 316 are positioned between tension mount 308 and cradle 312. After the vessel 330 has been ligated as described above, the shears 316 are extended to transect the vessel. As the vessel is tied by the suture 320 which passes into the tension mount 308, the vessel is thus placed within easy reach of the blades of the shears 316. The tension mount 308 is formed with a slight bend toward the center of the cannula 100 to facilitate keeping the vessel 330 within the apex of the open blades of the shears 316. After transecting the vessel 330, the vessel 330 will fall away as shown in FIG. 15. The suture 320, however, is now within the apex of the open blades of the shears 316. The shears 316 are then extended again and used to cut the suture 320. The ligated vessel 330 remains in the surgical site, and the graft is able to be removed through the first and only incision.

FIGS. 16a–c illustrates multiple views of tension mount 308. FIG. 16a illustrates tension mount 308 attached to a collar 336. The collar 336 allows the cannula 100 to be used without a tension mount 308 for the initial transection operation in which the tributaries of the vessel 330 are transected to allow the main length of the vessel to be extracted from the body. For this initial transection operation, the tension mount 308 may interfere with this procedure, and thus should be removed.

The collar 336 of the tension mount 308 has proximal and distal ridges 338, 339 disposed on its inner surface. FIG. 16b illustrates in greater detail the proximal ridge 338 which mates with ridges disposed on the cannula surface. As shown in FIG. 16c, the distal end 342 of the cannula 100 is smooth plastic or other bioinert material on which the ridged collar 336 may slide easily. Ridges 346 situated at flat or recessed portions 345 on the surface of the body of cannula 100 form edges 344 for retaining the collar 336. Upon sliding the collar 336 onto the distal end 342 of the cannula 100, the collar 336 resiliently expands and ridges 338, 339 of the collar 336 align with edges 344 of the cannula 100. Upon alignment, the collar 336 resiliently contracts and thus forms a secure fitting of collar 336 on cannula 100. When the surgeon wants to remove the collar 336, the surgeon simply twists the collar 336 to misalign the ridges 338, 339 of the collar with ridges 346 of the cannula 100, causing the collar 336 to resiliently expand again, thus allowing the collar 336 to be easily removed from the cannula 100.

FIG. 17 illustrates a method of performing remote vessel ligation in accordance with the present invention. The surgeon advances 1700 a suture loop 328 along a vessel to a remote site from incision. The suture loop 328 is displaced 1704 onto the vessel responsive to retraction of the retractor, and, responsive to exerting 1708 a backward force on the suture, the vessel is ligated.

In a further embodiment, as shown in FIG. 18, the one-incision ligation and harvesting operation is performed under gas insufflation. First, an incision is made 1800 at the desired beginning point of the graft. For example, for saphenous vein harvesting for coronary artery bypass grafting, the incision is made at the knee. Next, the cannula 100 is inserted 1804 into the incision, and the incision is sealed 1808. A tunnel is formed along the vessel by insufflating 1812 the area with gas. The suture loop 328 is safely

US 6,830,546 B1

11 12

advanced **1816** to the destination. For saphenous vein harvesting, the loop **328** is advanced to its origin at the saphenofemoral junction. The loop **328** is displaced **1820** onto the vessel, and a backwards force is applied **1824** to the suture **320** to ligate the vessel. The vessel is transected **1828** and the suture is cut **1832**. The vessel can now be removed **1836** from the original incision. Thus, in accordance with the present invention, only one incision is required to harvest and ligate vessel in accordance with the present invention. The use of dissection cradle **312** allows the suture loop **328** of suture **320** to be advanced safely to the surgical site without being caught on the main trunk of the vessel or side branches thereof. The tension mount **308** accurately and reliably positions the vessel for transection and the suture **320** for cutting and provides the tension required to tighten the suture loop **328** of suture **320** onto a forward shoulder of the curved channel **304** for safe advancement and tensioning as required to provide hemostasic transection and harvesting of a target vessel.

What is claimed is:

1. Surgical apparatus comprising:

an elongated cannula including a plural number of lumens extending therein between proximal and distal ends thereof;

a retractor disposed within a lumen of the cannula to extend beyond the distal end of the cannula for engaging a vessel in response to movement of the retractor within the lumen to resiliently displace the vessel away from axial alignment with the elongated cannula; and

a surgical tool supported in a lumen of the elongated cannula and extending beyond the distal end thereof for simultaneous operation with the retractor for performing a surgical procedure on the vessel engaged by the retractor.

2. Surgical apparatus according to claim 1 in which the retractor and the surgical tool are relatively movable near the distal end of the cannula to facilitate severing a portion of the vessel engaged by the retractor.

3. Surgical apparatus comprising:

an elongated cannula including a plural number of lumens extending therein between proximal and distal ends thereof;

a retractor disposed within a lumen of the cannula to extend beyond the distal end of the cannula for engag-

ing a vessel in response to movement of the retractor within the lumen, the retractor including at least one arm slidably disposed within said lumen of the cannula that supports a cradle in lateral orientation with respect to the arm; and

a surgical tool supported in a lumen of the elongated cannula and extending beyond the distal end thereof for performing a surgical procedure on a vessel engaged by the retractor.

4. Surgical apparatus according to claim 3 in which the cradle includes a generally U-shaped segment laterally oriented with respect to the arm.

5. Surgical apparatus according to claim 4 in which the arm includes a distal portion thereof that is laterally flexible and resiliently biased away from axial alignment with the elongated cannula.

6. Surgical apparatus according to claim 5 in which the U-shaped cradle includes a recess disposed to engage a vessel therein that is aligned in the direction of the resilient bias for resiliently deflecting a vessel engaged thereby away from axial alignment with the elongated cannula.

7. Surgical apparatus according to claim 3 including a pair of arms slidably disposed within lumens of the catheter and supporting the cradle therebetween at distal ends of the pair of arms.

8. A surgical procedure performed with an elongated cannula including a retractor and a surgical tool disposed near a distal end of the cannula, the procedure comprising the steps for:

positioning the distal end of the cannula near a target vessel;

engaging the target vessel with the retractor for resiliently displacing the target vessel laterally away from axial alignment with the elongated cannula; and

simultaneously engaging a branch vessel of the displaced target vessel with the surgical tool to sever the branch vessel from the target vessel.

9. The surgical procedure according to claim 8 in which the retractor and surgical tool are selectively deployed from the distal end of the cannula for simultaneous operation to sever the branch vessel from the target vessel.

* * * * *